## HUFF, Administrator, *v.* EARL and Others.

Where an instruction given to the jury is such that the party objecting to it has no ground to complain thereof, it will not be inquired whether the instruction was correct as an abstract legal proposition.

The giving of the power by a debtor to his creditor to sell property for the payment of his debt, does not make him a trustee of the debtor.

The purchase by a trustee, at his own sale, of the property of the *cestui que trust*, is not absolutely void. The purchase will be for the benefit of the *cestui que trust*, if the latter desires to avail himself of it; but if the *cestui que trust* chooses to confirm the purchase, or even to hold the trustee to it against his wishes, he may do so.

A debtor agreed to give his creditor a lien on personal property sold by the latter to him, and set it apart for the purpose of vesting in him possession, and gave him power to sell the property upon the non-payment of the debt. The purchase-money not being paid, the creditor proceeded to sell the property at public sale, according to the agreement, but the debtor purposely kept the property concealed and locked up from view. *Held*, that the sale was not rendered void by the property being thus kept out of view. *Held*, also, that the debtor could not complain of the inadequacy of the price caused by such concealment of the property.

If a debtor, who has set apart to his creditor specific property, and em powered him to sell it to satisfy the debt, mixes other property with it, without the consent or knowledge of the creditor, so that it cannot be distinguished, he will not be permitted to derive advantage from the act.

Action upon a replevin-bond by the administrator of the assignee, for the failure of the principal in the suit in replevin to prosecute it with effect. Interlocutory judgment for want of a plea, and the assessment of damages

submitted to a jury. The suit in replevin had been brought for certain pork, hams, and lard, and was dismissed for the insufficiency of the affidavit. The defendants having adduced evidence to prove that the property replevied was the product of hogs sold by *A.*, the principal in the bond, and one *B.*, to *C.*, the plaintiff's intestate, and that the latter had agreed that *A.* and *B.* should retain a lien on the property, and the vessels containing it, for a balance due for the hogs, and that the same should be kept separate from other property of like kind for that purpose, and that it was set apart for the avowed purpose of vesting the possession in *A.* and *B.*; and having also adduced evidence to prove that the intestate had given *A.* and *B.* authority to sell the property to secure the balance of the purchase-money due, upon giving certain notice, and that, after giving the notice, *A.* and *B.* sold the property at public sale, pursuant to the agreement, and bought the same for a sum less than the balance of the purchase-money due; they then offered in evidence, in mitigation of the damages, the record of a suit in assumpsit by *A.* and *B.* against the intestate for the price of the hogs, in which the intestate had pleaded the general issue, and also a special plea, which recognized the validity of said public sale, and set up that *A.* and *B.* had received therefrom a certain sum, being more than the balance due on the price of the hogs, to which the plaintiff had replied, traversing the plea as to the amount alleged to have been received, and averring it to have been a specific sum, less than the balance due on the price of the hogs, in which case there was a general verdict for *A.* and *B.*, and judgment accordingly. *Held,* that said record was correctly admitted in evidence.

APPEAL from the *Tippecanoe* Court of Common Pleas. Smith, J.—This was an action of debt, brought by the appellant against the appellees, upon a replevin-bond.

The declaration alleges that, on the 22d of *February*, 1840, one *Forseman*, who has since died, filed in the office of the clerk of the *Fountain* Circuit Court, an affidavit stating, that the affiant and *Earl*, one of the defendants in the present suit, were the joint owners of the pork, hams, and lard of 510 hogs, which were unjustly detained from them by *John Sherry*, *William Sherry*, *Montgomery Sherry*, *Jacob Sherry*, and *Jesse Sherry;* whereupon a writ of replevin issued, by virtue of which the sheriff took said property from the possession of the *Sherrys* and delivered it to *Forseman* and *Earl*, upon their executing a replevin-bond in the penal sum of 8,000 dollars, conditioned that they would prosecute said writ to effect, and without delay, and duly return said property in case a return should be awarded.

*Margin:* May Term, 1852.

Huff
v.
Earl.

Wednesday, May 26.

May Term,
1852.

Huff
v.
Earl.

It is averred that *Forseman* and *Earl* filed their declaration in replevin, and such proceedings were thereupon had, that at the *March* term of the *Fountain* Circuit Court said writ of replevin was dismissed, in consequence of defects appearing upon the face of the affidavit, so that the said *Forseman* and *Earl* did not prosecute their said writ to effect.

It is then averred that the sheriff assigned the replevin-bond to the *Sherrys*, who assigned it to *George W. Sherry*, who has since died.

The appellant is the administrator of *George W. Sherry*, and the suit was brought against *Earl*, *Reynolds*, and *Steele*, the surviving obligors of the replevin-bond.

The defendants below filed three pleas, which were severally demurred to, and the demurrers were sustained. An interlocutory judgment was then rendered, a jury was called to assess the damages, and a judgment was rendered upon the assessment, in favor of the appellant, for the sum of 10 cents. A motion of the appellant to have the verdict set aside and a new inquest granted, was overruled.

Upon the trial, the plaintiff read in evidence the bond and indorsements described in the declaration, and proved that the property mentioned in the condition was of the value of 4,000 or 5,000 dollars when replevied.

The defendants read an agreement, in writing, dated *September* 28th, 1839, between *Forseman* and *Earl*, of the first part, and the *Sherrys* named in the bond, by the name of *John Sherry* and *Brothers*, of the second part, by which it was stipulated that *Forseman* and *Earl* sold to *John Sherry* and *Brothers* 510 hogs, on the premises of *Earl*, and a large quantity of corn in the field of said *Earl*. *Sherry* and *Brothers* were to pay for said hogs and corn 1,200 dollars in hand, 1,200 dollars on the 15th of *November*, 1839, and the balance on the 20th of *December*, 1839. This sale was to be considered complete at the time; but it was stipulated that *Sherry* and *Brothers* should not remove the hogs from the premises of *Earl* until full payment of the purchase-money was made; that *Forse-*

*man* and *Earl* should hold a lien on said hogs until they were fully paid for; and that on the failure of *Sherry* and *Brothers* to pay said purchase-money, it should be lawful for *Forseman* and *Earl*, on giving fifteen days' notice, by one advertisement in a newspaper at *Lafayette*, to sell said hogs, at public sale, to the highest bidder, and out of the proceeds pay themselves what might be due.

To this agreement there was attached a memorandum signed by the contracting parties, and dated *December* 24th, 1839, to the following effect: That the foregoing agreement was so modified, that *Sherry* and *Brothers* should be at liberty to slaughter and pack said hogs in their pork-house, notwithstanding they had failed to make payment according to their contract; but *Forseman* and *Earl* should hold a lien on the pork, hams, and lard of said hogs, when so slaughtered, and the vessels in which they should be packed; that *Sherry* and *Brothers* should keep the same separate and apart from all other pork, hams, and lard, so that the same could be readily distinguished, and should not be at liberty to remove the same from their said pork-house until full payment of the purchase-money, with interest from the time of their default, should be made; and that *Forseman* and *Earl* should be at liberty, at any time, to sell said pork and vessels, on giving notice as provided in the previous agreement, and out of the proceeds pay themselves all arrearages of the purchase-money and interest.

The defendants then proved, that on the 7th of *February*, 1840, the following notice was inserted in a newspaper published at *Lafayette*.

" There will be sold, at public auction, the pork, hams, and lard of 510 hogs, at the pork-house of *John Sherry* and *Brothers*, on the 22d of *February*, 1840, to satisfy a lien of the undersigned on said pork, hams, and lard. Terms of sale made known on the day of sale." (Signed) " *Forseman* and *Earl*."

They then proved by one *Hart*, that he (*Hart*) was employed by *Forseman* to sell some pork on the day named in the above notice, at the pork-house of *Sherry* and *Bro-*

*thers;* that he saw there the defendants and some of the *Sherrys;* that he was directed to cry the pork, hams, and lard of 510 hogs, which he did at one offer, and they were struck off to *Forseman,* he being the only bidder, at a price which he did not remember; that the pork-house was locked up, so that it could not be entered, and he did not see the pork, or have any of it in his possession.

One *Kiser* was then called, and he testified, on behalf of the defendants, that he was employed to help kill the hogs in question at *Sherrys'* pork-house; that the hogs were killed, salted, and put up separately from other hogs, the lard being put in barrels and kegs; that some time afterwards, *Forseman* and *Earl* came, and in the presence of one of the *Sherrys,* moved the pork, hams, and lard to another part of the pork-house, putting up plank between that and other pork, the parties saying that the object of *Forseman* and *Earl* was to take possession of it; that after the pork had been thus placed apart by *Forseman* and *Earl,* the *Sherrys* removed some of it and placed other pork in lieu of that removed, saying there was some difficulty, and that *Forseman* and *Earl* might look out; that on the day of sale, and while the sale was being made, there were persons in the pork-house, but the doors were locked—*William Sherry* having the keys; that the pork sold for 1,000 dollars, and, after the sale, the sheriff of *Fountain* county came with a writ of replevin and took possession of the pork which had been so placed by itself, and it was taken away on a steam-boat by *Forseman* and *Earl,* who received it from the sheriff.

This witness, on cross-examination, stated that 47 or 57 of the 510 hogs of *Forseman* and *Earl* were not slaughtered, that number having been turned out of the drove as being too lean, and suitable only for stock-hogs, but the product of 510 hogs was taken under the writ of replevin, the pork taken under said writ being the same that had been before set apart, except so much of it as had been mixed by the *Sherrys.*

The defendants also gave in evidence, the record of a suit commenced in the *Tippecanoe* Circuit Court, at the

*August* term, 1841, by *Forseman* and *Earl* against *John Sherry* and *Brothers*.

This was an action of assumpsit founded on the agreement given in evidence in this suit. The declaration averred that the purchase-money of said hogs and corn amounted to 5,655 dollars, all of which was due and unpaid. The defendants, the *Sherrys*, filed four pleas, the first being the general issue, and the second a plea of payment. The third plea averred that *Forseman* and *Earl* did give notice and did sell, on said 22d day of *February*, 1840, pursuant to the agreement and memorandum modifying it, said pork, hams, and lard from said 510 hogs, for 7,000 dollars, and did fully pay themselves out of the proceeds. The fourth plea averred that the plaintiffs were bound to make their pay for said hogs and corn out of said pork, hams, and lard, and that they might have made all that was due them if they had sold the same according to the agreement.

The plaintiffs replied to the second plea, denying payment, and to the third *precludi non*, except as to 1,000 dollars, because the proceeds of the sale amounted to that sum and no more. A demurrer was sustained to the fourth plea, and, issues being joined on the first three, there was a trial and the plaintiffs recovered a judgment for 3,811 dollars damages.

The evidence introduced by the defendant was designed to show, that the property described in the writ of replevin was not, at the time it was taken, the property of the *Sherrys*, but the property of the replevin-plaintiffs, and that, therefore, the plaintiff in this suit was entitled to recover only nominal damages. It appears that the defense thus set up was successful on the trial in the Court of Common Pleas, and the appellant now contends, that the judgment rendered by that Court was not warranted by the facts.

The first position taken by the counsel for the appellant is, that *Forseman* and *Earl* abandoned their lien as vendors, by surrendering the possession of the property to the *Sherrys* as vendees; and the reservations in the

agreements stipulating that the former should hold a lien on the chattels sold, being *executory* only, did not vest any property in them. Upon this point the jury was instructed that the agreements created, at most, but a dormant lien, and the right of the vendors to enforce it, by their own act, without the aid of the law, was lost with the possession; but if the property was afterwards redelivered to the vendors for the express purpose of rendering it subject to their lien, the lien would revive from that time and continue so long as they retained the possession. This question, respecting the lien retained by *Forseman* and *Earl*, can only be material so far as it affects their right to make the sale which was made, or attempted to be made, in pursuance of the contract between the parties; and we think the appellant has no reason to complain of the instruction given. If, after the hogs were slaughtered, the *Sherrys* voluntarily delivered the pork and lard to the vendors, to enable them to make a sale pursuant to the contract, and there is evidence from which it might be inferred that they did so, this delivery, if *Forseman* and *Earl* retained possession under it to the time of sale, would render the argument that the contract was merely *executory* irrelevant. If the contract was, that the *Sherrys*, in case of their failure to pay the purchase-money, would permit the vendors to have possession of and to make sale of the property, and they did give the vendors possession and suffer them to retain it until the sale was made, this would be an *execution* of the contract.

It is further insisted by the appellant that the sale was void for other reasons. One of them is, that, in making the sale, *Forseman* and *Earl* acted as the agents or trustees of the *Sherrys*, and could not be purchasers. The giving a creditor a power to sell property for the payment of his debt, does not make him a trustee of the debtor, but even if *Forseman* could be considered as standing in that relation to the *Sherrys*, his being the purchaser would not render the sale absolutely void. The doctrine upon this subject is, that a trustee cannot be a purchaser of the

trust-estate, for his own benefit, but his purchase will be for the benefit of the *cestui que trust*, if the latter desires to avail himself of it. But, if the *cestui que trust* chooses to confirm the purchase, or even to hold the trustee to it against his wishes, he can do so. See *Brackenridge* v. *Holland*, 2 Blackf. 377, where this question is discussed and many authorities cited.

Other objections made to the sale are, that the goods were not in view, were not identified, and were not in the possession or under the control of *Forseman* and *Earl* when the sale was made. Upon these points the Court instructed the jury that the circumstance that the property was not in view at the time of the sale, would not alone render the sale void, if the other party was in fault; and if a mixture was made by the *Sherrys*, after the property had been set apart by *Forseman* and *Earl*, and without their knowledge or consent, such mixture of other pork with that sold could not be taken advantage of by the plaintiff. We think these instructions were warranted by the facts. If *Forseman* and *Earl* acquired lawful possession of the property prior to the sale, the mere locking up of the pork-house in which it was contained, on the day of sale, would not deprive them of their authority to sell; and if the *Sherrys* purposely threw obstacles in the way of an advantageous sale, by preventing the property from being visible, which it may be inferred from the evidence they did, they have no reason to complain of the natural results of their own acts. The rule with respect to the admixture of property in such cases, is too well known to require repetition here. That also is stated in the case of *Brackenridge* v. *Holland*, *supra*.

The record of the former suit brought by *Forseman* and *Earl* against the *Sherrys*, affords proof that the latter admitted the validity of the sale, and availed themselves of it, under their third plea, to reduce the damages recoverable in that action. The plea states the date of the sale referred to, and shows it was the same sale the validity of which is now disputed. The replication admits there was such a sale, and that it produced 1,000 dollars, which

were received in part payment of the plaintiff's demand. The verdict is general, and does not show on which issues the damages were assessed, but this admission upon the record constituted a complete bar to that much of the plaintiffs' demand, whatever might have been the findings upon the issues made by the other pleas. If the *Sherrys* had proved that the proceeds received amounted to the whole of the purchase-money, the plaintiffs would have recovered nothing; and, as the plaintiffs admitted that they received a certain sum in part payment, they were not entitled to recover any more than the balance which remained in controversy. It is true the law allows conflicting and contradictory pleas, and a variety of distinct defenses may be set up, but if the defendant sustains any one valid plea to the whole cause of action, he defeats the suit, and so if he sustains a plea to a part of the cause of action, he defeats it to that extent.

The admission of this record in evidence was objected to, but the objection was overruled. The jury were instructed that, as oral evidence of the sale was also given, they should not regard the record as conclusive, but as evidence of a high character, taken in connection with the oral testimony, that the sale was valid. The appellant cannot object to this instruction. Where, in an action of debt on an award, the defendant, under the general issue, contended that the instrument of submission was not properly executed, and the plaintiff produced a record showing that, subsequently to the award, he had sued the defendant in assumpsit for the same demand that was included in the submission, and that the defendant defeated the suit by relying on the submission and award; it was held by this Court that the law would not sanction such an inconsistency as to permit the defendant to defeat the plaintiff's action of assumpsit by pleading the award, and then defeat his subsequent suit for the same demand, by denying the validity of the award. *Stipp* v. *The Washington Hall Company*, 5 Blackf. 473. That case is very analagous to the one under consideration. The *Sherrys* pleaded the sale in question, and re-

lied upon it to defeat the action of *Forseman* and *Earl* for the recovery of the purchase-money due them, and the representative of the assignee of the *Sherrys* now seeks to recover the value of the property on the ground that the sale was invalid. The inconsistency would be equally great.

It may be observed here, that the evidence afforded by this record has a bearing upon all the objections to the sale before noticed. The fact that they themselves insisted on the sale to reduce the claim of *Forseman* and *Earl* for the purchase-money, may, at least, be considered evidence that the *Sherrys* admitted its validity and waived any objections to the mode or manner in which it was made. This they could do if they thought proper, even if there were objections which otherwise would have rendered the sale invalid. If they had made a settlement with *Forseman* and *Earl*, without being sued, for the purchase-money due by their contract, and at such settlement they had claimed and obtained a deduction for the proceeds of the sale which had been made, that would, certainly, have been evidence of a waiver, on their part, of any objections to the sale. Of course, the fact that they made such a claim to reduce the damages in an action of assumpsit for the purchase-money, is, at least, equally strong evidence to that effect.

We are of opinion, therefore, that there was sufficient evidence to warrant the finding of the jury, and there is no error apparent on the record.

*Per Curiam.*—The judgment is affirmed with costs.

*Z. Baird, R. Jones, R. C. Gregory, J. Pettit,* and *S. A. Huff,* for the appellant.

*G. S. Orth* and *E. H. Brackett,* for the appellees.