No. 15,594.

## HAXTON ET AL. *v.* McCLAREN.

**TRUST AND TRUSTEE.**— *Conversion of Trust.*—*Election as to Remedies by Beneficiary.*—When a son received notes from his father for certain specified uses and purposes, he to proceed at once to collect the notes and pay part of the proceeds to the plaintiff, the donor's daughter, and the son accepted the trust, but repudiated it before it had been fully executed

| 132 | 235 |
| 136 | 339 |
| 132 | 235 |
| 138 | 224 |
| 132 | 235 |
| 140 | 465 |
| 142 | 488 |
| 143 | 704 |
| 132 | 235 |
| 160 | 642 |
| 160 | 643 |

and before his father's death, and being appointed one of the executors of his father's will, turned over to the estate the trust property in his hands, the plaintiff could either follow the fund or proceed against the trustee. The trust property did not constitute a part of the father's estate.

SAME.—*Evidence.*—*Assessment Lists of Trustee.*—The assessment lists of the trustee during the period it was claimed that he had collected part of the trust fund and converted it to his own use, and showing an increase in his personal property, were admissible in evidence as tending to show that he had collected and converted said fund.

SAME.—*Evidence.*—The recognition by the plaintiff of the validity of her father's will, which was dated before the trust, would not preclude her from claiming the trust property. The will only operated on property owned by the father at his death.

SAME.—*Hearsay Evidence.*—*Suppression of Correspondence.*—It was claimed that the father had complained that the son had suppressed correspondence between him and the plaintiff. The son offered to show in rebuttal that he had told his daughter to write all letters which her grandfather might wish, but there was no offer to show that the grandfather knew of this; neither was it claimed that the daughter was present.

*Held,* that the evidence, even if material, was hearsay, and properly excluded.

SAME.—*Complaint.*—*Suit Against Trustee Individually and as Executor.*— When the trustee was sued in his individual capacity and also as executor, for the purpose of enjoining a distribution of the fund under the will, and the complaint proceeded on the theory that the fund was a trust fund, and did not belong to the estate, it was not error to refuse to render judgment against him as executor.

SAME.—*Trustee's Unsoundness of Mind.*—*Conversations With Him.*—*Opinion of Witness.*—*Harmless Error.*—The defendants claimed that the father at the time of the creation of the trust was a person of unsound mind. A witness who was introduced to support this claim testified to many conversations she had with the father, as well as to many remarks she had heard him make, tending to show the condition of his mind. On cross-examination she was asked: "What did you hear him say imputing that any one had stolen his tobacco?" and she answered, "I never heard him say anything imputing stealing."

*Held,* that the question did not call for the witness' opinion of the language used by the father.

*Held,* also, that the answer was of such a character as to show conclusively that the defendants were not harmed either by the question or answer.

SAME.—*Judgment Against Debtor to Trust Fund.*—When, in addition to the judgment against the trustee, a judgment was sought against a party for the amount claimed to be due from him to the trust fund, and there was nothing in the verdict or in any finding of the court fixing the

amount, there was nothing upon which to base a judgment, even if the plaintiff was entitled to this relief.

JUDGMENT.—*Harmless Erroneous Instruction.*—A judgment will not be reversed on account of an erroneous instruction which does not injuriously affect the rights of the party complaining.

From the Owen Circuit Court.

*I. N. Fowler* and *W. A. Pickens,* for appellants.

*W. Hickam* and *D. E. Beem,* for appellee.

COFFEY, J.—This was an action in the Owen Circuit Court by the appellee against appellants, John Haxton and Alexander Haxton, in their individual capacity and as executors of the last will of Richard Haxton, deceased, to enforce the provisions of an alleged trust. The complaint alleges substantially that Rebecca McClaren, John Haxton and Alexander C. Haxton are the children of Richard Haxton, now deceased; that on the 10th day of January, 1883, Richard Haxton had money and notes amounting to $4,000; that the notes were executed to him by his son, John Haxton; that they were then due, and drawing 8 per cent. interest; that said Richard, desiring and intending to make a final disposition of his said property, and to part with his title thereto, transferred and delivered the same to appellant Alexander C. Haxton, for the following uses and purposes, to wit: Said Alexander C. was to proceed at once to collect all of said notes; that out of the proceeds he should pay to appellee, Rebecca McClaren, the sum of $1,000, and appropriate to his own use and benefit a like amount, pay over to each of five named grandchildren $25, and out of the remainder of said money pay to said Richard, from time to time, as necessity might require, and expend for his benefit, such sums as said Richard might need for his reasonable personal expenses, outside of his general support, for which other provision had been made, and whatever balance of said money should remain in the hands of said Alexander at the death of said Richard, after complying with the provis-

ions aforesaid, should be equally divided between said Alexander C. and said Rebecca; that said John, being present when said arrangement was made, consented thereto and agreed to pay said notes to said Alexander C. for said uses; that said Alexander C., for himself and on behalf of this plaintiff, being authorized by her so to do, accepted said notes and money from said Richard, took the same into his possession, and agreed to comply with the above conditions; that thereafter said Alexander collected of said notes a large sum, to wit: $2,500, being more than enough to pay the beneficiaries. their several amounts; that in part performance of his trust, he paid to the plaintiff $190 and to each of three of the grandchildren $25, to wit: Sabina Haag, Louisa Dack and Charles McClaren; that on the 17th day of August, 1888, said Richard died; that before said Richard's death, to wit, in January, 1884, Alexander repudiated his said trust, and, though often requested, failed and refused to pay to the plaintiff any further sum out of the said money; that at the death of said Richard, said Alexander had remaining in his hands of said fund the sum of $3,000 and also one of the notes of said John, which had been turned over by said Richard, on which there was due $1,200; that said John and Alexander, contriving further to defeat said trust, after the death of said Richard, to wit: on the 26th day of October, 1888, having been appointed executors of a pretended will of said Richard, purporting to bear date March 2d, 1874, proceeded to make an inventory, and included therein all the notes and money remaining in the hands of said Alexander, which had been so transferred to him by said Richard; that they, as executors aforesaid, are treating said trust funds as belonging to the estate of said Richard, and are proceeding to distribute the same under the provisions of said will, by which the whole thereof would be given to other beneficiaries.

Upon this complaint the appellee prayed that the appellants be required to file a full exhibit of the assets, both as

to money and notes belonging to the trust therein named; that the appellant Alexander be required to make a full exhibit of the receipts and disbursements of the trust property; that the appellees have judgment against the appellant Alexander for the balance of the $1,000 first to be paid her under the trust, with the interest thereon, and that she have judgment against him for one-half the amount of the remaining trust fund; that judgment be rendered against the appellant John for any sum due from him on the notes belonging to the trust, to be disposed of and divided as the court might direct under the terms of the trust, and the appellants be enjoined from disposing of the trust funds as executors of the will of Richard Haxton and for general relief.

To this complaint the appellants answered, among other things, that at the time of the creation of the pretended trust named in the complaint, Richard Haxton was a person of unsound mind, and for that reason incapable of contracting.

A trial of the cause by jury resulted in a joint verdict against both the appellants for the sum of seventeen hundred and sixty-three dollars and fifty-nine cents, upon which the court, over a motion for a new trial, rendered judgment.

It is earnestly insisted by the appellants that the circuit court erred in overruling their demurrer to the complaint. It is contended that the complaint is fatally defective, because it fails to allege that Richard Haxton left no widow; that the children and grandchildren are entitled to this property, or that there are no debts due from his estate; and in support of their contention they cite *State, ex rel.,* v. *Sanders,* 90 Ind. 421, *Mitchell* v. *Dickson,* 53 Ind. 110, *Walpole* v. *Bishop,* 31 Ind. 156, and many other cases of similar import.

The argument proceeds upon the assumption that the property in controversy belonged to the estate of Richard Haxton, and if this assumption is true, of course, the objection is well taken. We are met, therefore, at the beginning of the investigation, with the question as to whether the transaction alleged in the complaint created a valid trust, and had the

effect of divesting the title of Richard Haxton to the property, a portion of which the appellee seeks to recover.

If the title of Richard Haxton was divested and became vested in Alexander Haxton, as trustee, the property does not belong to the estate, and the allegations necessary to recover property in a suit by an heir, in the absence of administration, are wholly unnecessary.

A trust in personal property may be created by parol. In the absence of a statute, as the owner of personal property has entire control of it, he may sell and convey it by parol, or he may transfer it for such uses and trusts as he may desire in the same manner. If a trust is once created and accepted it can not be altered or changed either by the donor or the trustee without the consent of the beneficiary. Nor, if executed, can it be revoked without the consent of the *cestui que trust.* If the trust is perfectly created, the donor or seller having nothing more to do, the person seeking to enforce it having need of no further action on the part of the donor, nothing being required of the court but to give effect to the trust, it will be carried into effect at the suit of a party interested although it was without consideration. Perry Trusts, sections 86–98; *Garrigus* v. *Burnett,* 9 Ind. 528; *Hunt* v. *Elliott,* 80 Ind. 245; *Mallett* v. *Page,* 8 Ind. 364; *Hon* v. *Hon,* 70 Ind. 135; *Mohn* v. *Mohn,* 112 Ind. 285; *Ewing* v. *Jones,* 130 Ind. 247.

In this case the trust was completely executed. Richard Haxton made a complete transfer of the property to his son Alexander, one of the appellants here, who accepted it upon the trust stipulated in the agreement, so that nothing remains for the court except to enforce the trust according to the terms of the agreement made at the time the trust was created. By transferring the property to the trustee Richard Haxton divested himself of title, and it became vested in the trustee. By this act Richard lost control of the property, and as the trust, so far as he had power over it, was executed, he had no power to revoke it. It is true that one thousand dollars

was charged with certain personal expenses of Richard, but that fact does not, in our opinion, affect what remained of that sum after the payment of such expenses.

It follows from what we have said that the fund now in controversy did not belong to Richard Haxton at the time of his death, and constitutes no part of his estate. For this reason the complaint is not subject to the objections urged against it.

It is insisted by the appellants that the verdict of the jury is not sustained by the evidence, and that the damage assessed is too large.

In passing upon these questions it becomes necessary to consider the allegations in the complaint, as they apply to each appellant separately. The complaint as to Alexander C. Haxton proceeds upon the theory that the appellee is entitled to recover from him, as trustee, her portion of the trust fund therein described. As to John Haxton, the complaint proceeds upon the theory that the appellee is entitled to have judgment against him for the amount due from him to the trust fund, to be paid into court for future distribution. It will thus be seen that the cause of action stated against the appellants is not joint, but several.

If the appellee, therefore, was entitled to recover at all it was upon the theory outlined in the complaint, and as every action must proceed from beginning to end upon some single definite theory, we must examine the evidence in the light of the facts alleged in the complaint.

The evidence on behalf of the appellee tends to prove that Richard Haxton, in the month of January, 1883, delivered to the appellant Alexander C. Haxton certain promissory notes executed to him by John Haxton, with an agreement, made at the time, that the notes should be collected at once, and that out of the proceeds Alexander should retain one thousand dollars for his own use, and should pay over to the appellee one thousand dollars. It was also agreed that Alex-

ander should retain one thousand dollars and pay whatever personal expenses Richard should incur during his life, and at his death, if any portion of this sum remained unexpended, it should be equally divided between Alexander and the appellee. The appellants and the appellee are the only children of Richard Haxton. In part performance of the trust Alexander paid the appellee the sum of one hundred and ninety dollars, but having discovered a will executed by Richard Haxton, which made a different disposition of his property, he refused to pay her any further sums. At the death of Richard Haxton, which occurred in the year 1888, the appellants probated this will and turned the trust fund over to the estate. They being the executors of the will, made an inventory of the trust fund and charged themselves with it as executors. The inventory, which consists principally, if not entirely, of the trust fund, amounted to $3,-821.67.

The evidence on behalf of the appellants tended to prove that no such trust as that claimed by the appellee was ever created, and that at the time of its alleged creation Richard Haxton was a person of unsound mind, and incapable of contracting.

The jury, however, believed the evidence introduced by the appellee and found, not only that the trust was created as alleged in the complaint, but also that Richard Haxton was at the time of sound mind. Of course we are not expected to disturb this finding, as there was evidence tending to support it, and we must, for this reason, treat the case throughout as one in which the trust was created under the terms and limitations fixed by the agreement between the parties at the time of its creation.

Under the terms of that agreement it was the duty of Alexander C. Haxton to collect the notes turned over to him by his father, Richard Haxton, and pay his sister, the appellee, one thousand dollars of the proceeds. It was his further duty, as such trustee, to pay over to her, upon the

death of Richard, her portion of the one thousand dollars not expended during his life. In violation of these duties he repudiated the trust during the life of his father, and upon his death divested himself of the title and control of the fund as trustee by transferring it to the executors of the will of Richard Haxton. It is true the appellee might have followed the fund in the hands of the executors, but she was not bound to do so. By divesting himself of title to the trust property and vesting the title in another, Alexander C. Haxton rendered himself personally liable to the appellee, and she had her election to either follow the property or proceed against him personally. Perry Trusts, sections 828, 843; *Pearson* v. *Moreland*, 45 Am. Dec. 319; *Garrigus* v. *Burnett, supra; Kinloch* v. *I'On*, 26 Am. Dec. 196.

Taking the inventory made by the appellants as executors of the will of Richard Haxton, as representing the true amount of the trust fund on hand at the time of his death, and it certainly tends to prove that fact, the damages assessed by the jury are not excessive. We are unable to say that the verdict of the jury is not supported by the evidence, or that there was error in the amount of the recovery.

On the trial of the cause the appellants propounded to one Marietta McIndo, a witness called on their behalf, the following question:

" State to the jury what, if anything, John Haxton, your father, ever said to you with reference to writing any or all letters or other writing for your grandfather, Richard Haxton, which he, your grandfather, might request you to write?" To this question the court sustained an objection.

There was evidence introduced by the appellee tending to prove Richard Haxton had complained that correspondence between him and the appellee had been suppressed by the appellants. As rebutting this evidence, they sought to prove by an answer to the above question that the appellant John Haxton had told the witness to write any and all letters that her grandfather, Richard Haxton, might request

her to write.  There was no offer to prove that Richard Haxton was present at the conversation or that he ever had any knowledge of it, and it is not claimed that the appellee was present.  The whole inquiry was remote from the material issue between the parties.  It is difficult to perceive how the fact that the appellants did or did not suppress correspondence between Richard Haxton and the appellee could throw any light upon the question as to whether the trust set up in the complaint existed, or as to whether Alexander Haxton, the trustee, was liable to account to the appellee for trust funds.  But aside from its remoteness the matter sought to be elicited was, we think, hearsay.  It consisted of a conversation between one of the appellants and the witness, in the absence of the appellee, and could not bind her.  If the trust did in fact exist, nothing that could be said or done, either by Richard Haxton or the appellants, or all of them together, in her absence or without her consent, could, in the least, affect her rights under the trust.  We do not think the court erred in sustaining an objection to this question.

The appellee was permitted, by the court, to read in evidence to the jury the assessment lists of the appellant Alexander C. Haxton, for the years 1879 to 1886.

It was contended by the appellee that Alexander had collected at least a portion of the money due on the notes delivered to him by his father, Richard Haxton, in trust, and had converted the same to his own use.  These assessment lists were introduced by the appellee to prove that during the period which they covered, his personal property had greatly increased, from which she claimed the inference arose that he had collected the money on the notes held in trust and included it in his individual taxable property.

The objection made to this evidence is as to its strength and not as to its admissibility.

It was certainly admissible for the purpose for which it was offered, but its weight was for the jury.

The appellants called, as a witness, Sarah Medaris, by

whom they sought to prove that at the time of the creation of the trust in question Richard Haxton was a person of unsound mind.

On her examination in chief she testified to many conversations she had had with him, as well as to many remarks she had heard him make, tending to show the condition of his mind, and upon cross-examination the appellee put to the witness the following question: " What did you hear him say imputing that any one had stolen his tobacco?"

To this question the appellants objected upon the ground, as stated to the court at the time, that the question asked the witness to put a construction upon the language of Richard Haxton and interpret to the jury what his words and language meant, and to give an opinion in that regard; and that the answer thereto, if the question were answered, would only be the expression of an opinion of the witness, and that the question and answer thereby sought to be elicited are an invasion of the province of the jury.

The witness answered: " I never heard him say anything imputing stealing."

Whatever else may be said of this question, it is certainly not subject to the objection made against it. It calls for the language of Richard Haxton upon a particular subject, and not for the witness' opinion of the language. Moreover, the answer was of such a character as to show conclusively that the appellants were not harmed either by the question or answer.

The appellants introduced in evidence the papers and record in an action brought by them in the Owen Circuit Court, as executors of the will of Richard Haxton, against his heirs and legatees to construe such will. To that action the appellee was a party, and filed an answer consisting of the general denial.

Upon the subject of this record the appellants asked the court to instruct the jury, in substance:

1st. That if she appeared and defended against that action

and interpose no objection to the execution of the will by the executors after the same should be construed by the court, that such fact might be considered, in connection with all the other facts and circumstances in the case, in determining whether or not she and the defendants were recognizing the will and acting upon its provisions.

2d. That if she appeared to that action and interposed no objection to the execution of the will, and the disposition of the property therein bequeathed as provided thereby when construed by the court, such fact was proper to be considered, in connection with all the facts and circumstances in the case, in determining whether or not any such arrangement, agreement or contract, as alleged in the complaint for the distribution of the property and estate of Richard Haxton, deceased, was ever made.

The will of Richard Haxton, a construction of which was sought by the appellants as executors, bears date long anterior to the creation of the trust set up in the complaint. We have been unable to perceive any connection between the suit to construe that will and the matters involved in this suit. The appellee does not now deny the validity of the will.

She claims, in this suit, that the property in controversy does not belong to the estate of Richard Haxton, and, therefore, it is not affected by the will. The controversy here is over the existence of the trust set up in the complaint, and the will of Richard Haxton and its construction could not, by any possibility, throw any light upon that controversy. Nor does the fact, if it be a fact, that the appellants and appellee all recognize the validity of that will, and have no objection to its provisions, affect the question before us, for it can only operate upon property owned by Richard Haxton at the time of his death.

The question as to whether the trust now in controversy did, or did not, exist, was in no sense involved in the action of the appellants, as executors, to construe the will of Rich-

ard Haxton. For these reasons there was no error committed by the court, in our opinion, in refusing these instructions.

We think instruction numbered nine, given by the court to the jury, states the law correctly, and that it is not open to the criticism to which it is subjected by counsel for the appellants in their brief.

The court was in error when it instructed the jury that the appellants had jointly answered the complaint, when in fact their answers were several, but such error could not possibly prejudice the rights of the appellants.

A judgment will not be reversed on account of an erroneous instruction which does not injuriously affect the rights of the party complaining. *Perry* v. *Makemson,* 103 Ind. 300 ; *Wolfe* v. *Pugh,* 101 Ind. 293 ; section 658, R. S. 1881.

Nor did the court err in refusing to render judgment against the appellants in their capacity as executors of the will of Richard Haxton. The complaint proceeds upon the theory that they are liable individually, and they were made parties in their fiduciary capacity for the sole purpose of obtaining an injunction against them to prevent a distribution of the funds in controversy amongst those entitled to share under the will. There is nothing in the complaint upon which a money judgment against them as executors could be based, for the whole theory of the complaint is that this fund does not belong to the estate, but is a trust fund held by Alexander C. Haxton at the time of Richard Haxton's death for the use of the appellee and others.

We have gone carefully over all the questions presented for our consideration by the appellants, and find no error for which the judgment as to Alexander C. Haxton should be reversed.

But the judgment as to John Haxton can not stand. As we have seen, the complaint as to him proceeds upon the theory that the appellee was entitled to a judgment against him for the amount due from him to the trust fund.

Assuming, without deciding, that the appellee was entitled to this relief, there is nothing in the verdict, or in any finding of the court fixing that amount.

Without such a verdict or finding there was nothing upon which to base a judgment. The liability of the appellants, as disclosed by the complaint, as we have said, is several, and not joint. To authorize a judgment against John Haxton there should have been a separate finding as to the amount due from him to the trust.

Judgment affirmed as to the appellant Alexander C. Haxton, and reversed as to appellant John Haxton, with directions to grant a new trial as to him.

Filed April 23, 1892; petition for a rehearing overruled Sept. 16, 1892.