## CAROTHERS WAREHOUSE BLDG. ASS'N v. McCONNELL.

No. 1236. Opinion Filed November 18, 1911.

(121 Pac. 191.)

1.  **PLEDGES—Rights of Parties—Rights as to Third Persons.** One who purchases property from the general owner, with full knowledge same is in the possession of another who is holding it under a claim that it is a pledge, takes the title to the property, subject to whatever rights the pledgee in possession may have in the goods.

2.  **SAME—Requisites—Lien.** F., a corporation at Houston, Tex., shipped to Frederick, Okla., to its own order, certain goods; wrote to M., a banker at Frederick, a stranger to the transaction, and who had no interest or concern in it, of the shipment, and asked him to pay the freight and charges on the goods and take delivery of same and hold them in his possession, and to draw on it (F.) for the amount advanced. M. did as requested and paid $500 or $600 for freight and for the purchase price of a car of brick shipped collect. The goods were delivered to him, and he took them into his possession and stored them, and drew a draft on F. for the advancements, which was never paid. **Held,** that the letter and the conduct of the parties with reference to the letter and goods were sufficient to support the verdict of the jury finding that the goods were held by M. as a pledge for the advancements made.

3.    **EVIDENCE**—Parol Evidence Affecting Writings—Admissibility.
      Upon the question whether an ambiguous transaction constitutes
      a pledge, the writing, if any, accompanying the transaction, the
      oral statements of the parties made at the time, or afterwards,
      and any collateral circumstances tending to show the intention
      of the parties may be considered.

      (Syllabus by Brewer, C.)

*Error from District Court, Tillman County; J. T. Campbell,*
*Judge.*

Action by the Carothers Warehouse Building Association
against J. E. McConnell. Judgment for defendant, and plaintiff
brings error. Affirmed.

*W. H. Dial,* for plaintiff in error.

*McGuire & Mosier,* for defendant in error.

Opinion by BREWER, C. This is a suit for damages for
the conversion of certain goods, wares, and merchandise. The
facts appear to be substantially as follows: About September,
1907, the Farmers' & Bankers' Warehouse & Building Association
of Houston, Tex. (hereafter called the Texas Company) entered
into a written contract with nine citizens of Oklahoma (who were
later to organize a corporation to be called Farmers' Union Ware-
house Company) to build at Frederick, Okla., a certain cotton
warehouse. These parties will hereafter be called the "nine citi-
zens." About the last of September, 1907, the Texas Company
shipped from Texas to Frederick, Okla., a quantity of building
material, consisting of two cars of lumber, a car of brick, a pair
of scales, some sheet iron, building paper, and four barrels of
pitch. This material was shipped by the Texas Company to
Frederick to its own order. After billing out the shipment the
Texas Company wrote a letter to J. E. McConnell, the defendant
herein, who seems to have been a banker at Frederick, and in no
way connected with either of the parties to the building contract,
and who will hereafter be called defendant, stating in the letter
that the material had been shipped and asking defendant to pay
the freight and all charges on its arrival, and to take charge of
the property and hold it, and to draw a draft on them, the Texas

Company, for the advancements, etc. It is not clearly stated, but the inference is irresistible, that the bill of lading must have been sent to defendant, so he could procure delivery of the material. Upon the arrival, acting on the letter and instructions of the Texas Company the defendant procured delivery to himself of the material, paying all freight and other charges, including the purchase price of the car of brick which had been shipped collect. These advances amounted to between $500 and $600. Upon paying the charges and obtaining the property from the railroad company, the defendant put the smaller portions in a house, and unloaded and stacked the heavier material, such as lumber and brick, on some vacant lots, in the vicinity where defendant supposed the building would later be erected. The nine citizens had not at this time acquired a site for the proposed building. It seems they later did buy the lots where the lumber was stored. After paying the charges and taking possession of the property, defendant drew a draft on the Texas Company for the amount thereof, but payment was not made. About this time the Texas Company appears to have failed or become embarrassed, and it sold its building contract to one W. A. Carothers, who will hereafter be called Carothers. It appears Carothers stepped into the shoes of the Texas Company, and talked with defendant about turning over the property to him so he could erect the building, and, while there is conflict in the evidence as to whether defendant turned over to Carothers any of the material, yet it is admitted by all that Carothers assumed the indebtedness due defendant and agreed to pay same for the Texas Company, to whose contract he had succeeded. Carothers defaulted and made no payment to defendant. Defendant testifies he continued in absolute possession of all the property, trying all along, unsuccessfully, to get payment for his advances. On November 29, 1907, defendant brought a suit against Carothers for judgment for the advances, and to have declared and enforced a pledgee's lien on the material. Carothers appears to have defended this suit, but defendant here, plaintiff there, obtained judgment against Carothers for the debt, and that he had a lien on the property,

which in due course appears to have been sold under the judgment by the sheriff. W. H. Dial seems to have been attorney in that suit for Carothers, as he. is in the one at bar. On November 29, 1907, the said Dial procured a copy of the petition in the suit for judgment and to foreclose the lien against Carothers. On the 30th of November or 1st of December, 1907, one or two days after procuring the copy of the petition, the said Dial testifies he went personally, as the agent of the Carothers Warehouse Building Association, hereafter called plaintiff, and bought all the rights of the Texas Company in the material. It also appears that Dial owned about one-third of the capital stock of plaintiff, and that Carothers was a stockholder. The evidence is silent as to when plaintiff became a corporation, but it appears in this transaction, after defendant was in court, to enforce his lien against Carothers, one of its stockholders, and who is described in the evidence as its agent, and after Dial, one of its large stockholders, who testifies he was plaintiff's agent, had appeared in court as the attorney for Carothers, and obtained copy of the petition in the suit. The suit of defendant against Carothers to foreclose the lien was pending for two or three months after plaintiff claims to have bought the rights of the Texas Company in the property, but the plaintiff stood by without intervention, or an assertion in the case of its rights, and saw the matter proceed to judgment and the property sold at sheriff's sale. The plaintiff after the property had been sold filed March 20, 1908, this suit for its conversion.

The defendant answered, setting up his advancement of freight and purchase price, his pledgee's lien and possession of the property, and that it had been sold under judgment and order of court, and denied any conversion or illegal handling of the property. The suit was tried on this issue as to whether defendant had a pledgee's lien, and whether he had maintained a continuous possession of the property under the same. The jury found for the defendant, and plaintiff below, as plaintiff in error, brings error to this court.

The Texas Company and the nine citizens of Frederick, the original projectors of this matter, seem to have all dropped out of the transaction early in the proceedings, leaving the struggle between the defendant, who made the advances, and who appears to have been drawn into the matter without interest or prospective benefit, upon the one hand, and Dial, Carothers, and plaintiff, who appear connected with the matters from different angles, upon the other hand.

The plaintiff in error urges in its brief the following alleged errors:  (1) That defendant had no lien as pledgee, and that the sale of the property in the proceeding was tortious.  (2) That the court erred in giving instructions 8 and 9.  (3) That the court erred in not giving plaintiff's instruction No. 1.  (4) That the court erred in sustaining objection to one question asked defendant.

We will dispose of the questions in their order.  Did the letter from the Texas Company in connection with the conduct of the parties with relation thereto and to the property constitute a contract of pledge express or implied?  And if so, did defendant maintain such a possession of the property as was necessary to preserve its character of pledge?  As to the question of possession, it was said in *Jackson v. Kincaid,* 4 Okla. 554, 46 Pac. 587:  "There must be an immediate, actual and continued change of possession of the property pledged as against subsequent purchasers," etc.  But as this question was determined by the jury under proper instructions upon conflicting evidence, its finding in favor of defendant's continuous possession forecloses the matter here.

"Sir William Jones defines a pledge to be a bailment of goods by a debtor to his creditor, to be kept till the debt is discharged. Lord Holt defines it thus:  'When goods or chattels are delivered to another as a pawn, to be security for money borrowed of him by the bailor. "  (Story on Bailments [9th Ed.] sec. 286.)

"It is the essence of the contract that the thing should be delivered as a security for some debt or engagement  *  *  *  it (contract of pledge) may also be implied from circumstances, as well as arise by express agreement."  (Story on Bailments [9th Ed.] sec. 300.)

In speaking of the actual contract of pledge it is said:

"As already intimated, no express contract is here essential since the transfer of possession with suitable mutual interest is largely relied upon." (Schouler's Bailments & Carriers [3d Ed.] sec. 179.)

"Our modern courts incline to balance carefully the equities of all who maintain conflicting lien rights against one another; determining upon all the circumstances which party should have priority. Possession *bona fide* acquired and maintained on the faith of a valuable service or payment is a most decisive circumstance in such cases," etc. (Schouler's Bailments & Carriers, sec. 199.)

"As a general rule no writing is necessary to the validity of a pledge, and statutes requiring a writing for validity of sales and mortgages do not apply to pledges." (31 Cyc. 796.)

"Upon a question whether an ambiguous transaction constitutes a pledge, the writing, if any, accompanying the transaction, the oral statements of the parties made at the time, or afterwards, and any collateral circumstances tending to show the intention of the parties are entitled to consideration." (31 Cyc. 798.)

"Where shares of stock of a corporation are delivered to a bank by a debtor of the bank, and the parties do not by any words or instrument attempt to define the relation which they should hold to the property so delivered, the transaction cannot be regarded as a sale or payment of the indebtedness, but the deposit of the stock will be presumed to have been intended as collateral security for the debt." (*Borland v. Nevada Bank of San Francisco,* 99 Cal. 89, 33 Pac. 737, 37 Am. St. Rep. 32.)

As to whether there was a mutual assent to the pledge, sufficient to sustain it, we will examine the facts and circumstances.

The Texas Company, residing in Texas, shipped to its own order at Frederick, Okla., these goods. It had no one there to receive them and pay the freight and charges. It was to its benefit to have these charges promptly paid on the arrival of the goods and the goods promptly unloaded at Frederick. It knew the goods to have a greater value than the freight and charges would be. It could not look after the payment and unloading itself as it would not be at Frederick. Under these circumstances it writes defendant, a banker at Frederick, who appears to have

been a stranger, and in no wise connected with the shipment, to not only perform an important service for it, but to advance of his own funds a large sum of money for its (the Texas Company's) benefit.

The letter had been destroyed, but oral testimony was given in a general way as to its contents. Substantially the letter advised defendant of the shipment—that it was for a warehouse to be built there, for defendant to look after the shipment, to pay the freight on same and take possession of the goods and to draw on them (Texas Company) for the amount of the advancements. On receipt of the letter the defendant projected himself, and put his money into the project, in which he had no previous interest or concern, and out of which there appeared no prospect of personal profit or benefit to him.

Take these facts, to what do they lead us in testing the intention of the parties? The goods having been billed to their own order, the Texas Company must, necessarily, have delivered to defendant the bill of lading to enable him to follow the request of the letter. The Texas Company knew it was asking an unusual service of a stranger, one that called for an outlay of considerable money, and it is logical to conclude that it reasoned thus: I am shipping valuable goods to this town and cannot be there to receive them. I will ask a banker there to pay them out for me. It is no concern specially to him, but being a citizen there he will feel at least some impersonal interest, and he will examine the goods, and finding them of ample value to protect him against any loss because of the temporary advancement of the money, he will feel perfectly safe, and will make the payments and hold the goods until I reimburse him by honoring his draft. Giving the Texas Company credit for business intelligence, and a desire to deal fairly, the above intention is the only reasonable one to draw from its conduct. The defendant evidently reasoned much the same way. He got the letter; the goods came; he felt willing to accommodate in a reasonable way a town enterprise and further its accomplishment. He saw the goods. They were of value to afford ample protection to the

advancement needed, and as he was to take and hold them in his possession, he would have a lien, and be amply protected under any circumstances. This is about the only way it could be reasoned out what the parties intended by their words and conduct. Therefore we conclude that the words and conduct of the parties were such as to warrant the jury in its finding that the defendant held the goods by way of pledge.

There is another reason why the plaintiff in error ought not to have recovered in this case. It was abundantly proven that Mr. Dial in buying the rights of the Texas Company in this property was the agent of plaintiff. He states it under oath and that he concluded the sale. He also in connection with another matter stated that Carothers was the agent of plaintiff. It is undisputed that at the time plaintiff claims to have bought the goods in controversy Carothers had assumed the debt due defendant for the advances made by him to the Texas Company, in writing, had defaulted, and had been sued by defendant for the debt and to enforce a pledgee's lien on the goods; that Dial was the attorney for Carothers, and had in his possession a copy of the petition in that suit; that within two days after receiving this copy Dial, in person, as plaintiff's agent, bought the goods in the name of plaintiff; that the suit against Carothers, with Dial as his attorney, proceeded to judgment, declaring a pledgee's lien, and a sale of the property to satisfy same, and with this full knowledge on the part of plaintiff it made no objection, set up no claim of ownership, disclosed no interest in the property, and stood by without objection and let the property sell.

Plaintiff also had full knowledge that defendant was, during the pending of the suit, in actual possession of part of the property, if not of all of it, and that he claimed to be in possession of all of it. Under these circumstances plaintiff bought the property from the general owner of the goods (Texas Company), subject to whatever lien or rights the defendant had in them; and defendant's possession, his suit against Carothers, his claim of lien, all being known to plaintiff, was notice and knowledge

to plaintiff of defendant's rights. *Means v. Bank of Randall,* 146 U. S. 620, 13 Sup. Ct. 186, 36 L. Ed. 1107.

"One who had purchased from the general owner goods in pledge, with knowledge of the pledgee's lien, and receives the goods from the latter accordingly, cannot set off his claim against the pledgor, but takes subject to the pledgee's lien." (Schouler's Bailments & Carriers, sec. 220.)

In the case of *Carrington v. Ward,* 71 N. Y. 360, the same doctrine is expressed. The first paragraph of the syllabus reads:

"One who has purchased from the general owner goods pledged for advances, with knowledge or notice of the lien of the pledgee, and who receives the goods from the latter with notice of his claim of a lien thereon for a specific amount, takes them with the obligation to pay the lien, and in an action therefor cannot offset a claim against the pledgor."

The objection of plaintiff in error to giving of instructions Nos. 8 and 9 cannot be considered because the record fails to disclose any objection upon the part of plaintiff to the giving of same. The record discloses that objection was offered by the defendant, but they seem to have been satisfactory to plaintiff at the time.

The plaintiff below requested the court to give the jury the following instruction, and assigns error in the court's refusal thereof:

"The jury is instructed that the petition, wherein J. E. McConnell is plaintiff and W. A. Carothers is defendant, filed in the county court of Tillman county, Okla., on November 25, 1907, does not, and cannot by its averments, give such notice as the law defines as notice of any liens then held by the defendant herein against any person other than W. A. Carothers, the defendant in that action."

Under the facts and circumstances in this case as fully shown hereinbefore, it would have been manifest error for the court to give this instruction. Mr. Dial testified he was plaintiff's agent in the purchase of this property, and in person concluded the purchase, one or two days after he procured and took into his possession a copy of the petition referred to in the instruction.

Plaintiff in error while the defendant was on the witness stand asked him if it was not true that while testifying in his suit

against Carothers, he testified as follows: "No; Carothers did not agree to give me a lien, just gave me the note sued on herein." And error is assigned because an objection to the question was sustained. This contention is not sound. It was not claimed in the suit or by defendant in his testimony that he obtained the lien through Carothers, but that same was through the Texas Company. So the question, or the excepted answer, would both have been immaterial, as to any issue in the case. Neither would it have tended to contradict the defendant.

Finding no substantial error in the proceedings, and believing that substantial justice was done, the cause ought to be affirmed.

By the Court: It is so ordered.

All the Justices concur.