## FIRST NAT. BANK OF GRANDFIELD v. HINKLE.

No. 8245—Opinion Filed Jan. 30, 1917.

(162 Pac. 1092.)

**1. Trusts — Express Trust—Personal Property—Creation by Parol.**

An express trust in personal property may be created by parol where there is an immediate delivery of the property to the trustee, followed by an actual and continued change of possession thereof.

**2. Pledges — Elements — Right of Redemption.**

It is an essential element of a pledge that there should be a right of redemption in the pledgor.

**3. Pledges—Principal and Agent—Trusts—Personal Property—Action for Conversion—Delivery for Sale.**

The absolute transfer and delivery of personal property to a third person, with directions to sell the same and apply all the proceeds to the payment of certain debts of the owner thereof, creates a trust rather than an agency, or a pledge, and vests the trustee, accepting such trust, with the right to maintain an action for the conversion thereof.

**4. Trusts — Property Subject—Trust Property—Fraud.**

In the absence of facts showing such a transfer and delivery to be fraudulent as to creditors, the trust property, after delivery thereof to the trustee, may not lawfully be seized in attachment against the creditor of the trust brought by one of his general creditors.

**5. Appeal and Error—Review—Theory of Case Below.**

Although a plaintiff in error is here held to his theory of the case advanced in the court below, the same rule does not apply to a defendant in error so far as to work a reversal of a judgment, proper under the pleadings, evidence, and instructions, because defendant in error seeks in his brief to support such judgment upon an untenable theory.

(Syllabus by Burford, C.)

Error from District Court, Tillman County; John W. Hayson, Assigned Judge.

Suit by H. D. Hinkle against the First National Bank of Grandfield, Okla. Judgment for plaintiff, and defendant appeals. Affirmed.

Wilson & Roe, for plaintiff in error.

Mounts & Davis, for defendant in error.

Opinion by BURFORD, C. H. D. Hinkle sued the First National Bank of Grandfield for the conversion of two mules. His petition as finally settled alleged that one W. R. Hinkle purchased the mules from O. P. Gammell and executed a promissory note, secured by a chattel mortgage on the mules, for the purchase price; that plaintiff signed said note as surety; that at about the time of maturity of said note W. R. Hinkle delivered the mules to plaintiff and directed him to sell them and apply the proceeds upon the balance due Gammell, and the remainder upon other debts; that while the mules were in plaintiff's possession, and he was seeking to sell them, they were taken on attachment in a suit brought by the defendant against W. R. Hinkle, and that by means of such process defendant obtained possession of the mules, sold them, and applied the proceeds to the payment of a debt due from W. R. Hinkle to the bank. The bank denied generally the allegations of the petition. Upon the trial the court instructed the jury, in substance, that if they believed from the evidence that W. R. Hinkle delivered the mules to plaintiff for the purpose and with the agreement above set out, and that while in plaintiff's possession the mules were seized by the bank and sold, and the proceeds applied to the payment of the bank's note, they should find for plaintiff. The proof was practically undisputed, and established the allegations of the petition. It further showed that almost immediately after delivering the mules W. R. Hinkle left and went to Texas, and that he thereafter entered an appearance and confessed judgment in the suit brought by the bank against him. The jury rendered judgment for the plaintiff, and the defendant thereupon brought the cause here for review.

There is no question in the case of any insolvency of W. R. Hinkle, or as to the transfer to H. D. Hinkle being in fraud of creditors. Nor does it appear why Gammell did not enforce his mortgage, except that an inference may be drawn that it was not filed. In any event Gammell raises no question of any violation of his rights as mortgagee by the transfer to plaintiff.

The controlling question is the right of plaintiff to recover upon the admitted facts. Upon the part of the bank it is insisted that plaintiff was merely the agent of W. R. Hinkle to sell the property, and that the mules still belonged to W. R. Hinkle, and were therefore subject to attachment at the hands of his creditors. Plaintiff, upon the

other hand, insists that the property was delivered to him as a pledge to secure him against loss by reason of his having signed, as surety, the purchase-money note to Gammell. Neither position is tenable.

As hereinafter shown the delivery of the property and contemporaneous agreement in regard to it constituted more than an agency, and one of the essential elements of a pledge, i. e., the right to redeem, is absent. It is inherent in the nature of a contract of pledge that the pledged property is delivered as security for a debt, or the performance of an obligation, and that though a right to sell be given, that right ordinarily, in so far as it bars the interest of the pledgor in the property, arises only after a failure to perform the condition of the pledge, as, for instance, by paying the debt or performing the obligation secured. Here all the evidence shows an absolute parting by W. R. Hinkle with all title to the property at the time it was delivered. Nowhere is there any element of a right to redeem. Without such right a pledge does not exist. See, generally, as to the nature of a pledge, Jackson v. Kincaid, 4 Okla. 554, 46 Pac. 587; Carothers Warehouse Ass'n v. McConnell, 30 Okla. 394, 121 Pac. 191. The same considerations eliminate the idea of agency.

After delivery of the property W. R. Hinkle left the state. Apparently he had no intention of having any further dealing in regard to the mules. Neither his appearance in the action, nor his letter inquiring what the mules brought at the sale, evidence any such intent. His apparent purpose in this regard was merely to find out the status of his indebtedness, and how much it had been decreased by the sale of the mules. His whole conduct indicates an executed intention to part with the possession and title to the property. Such being the case, neither a pledge nor an agency was established, but a trust for the benefit of Gammell, and the other creditors, with the plaintiff as trustee. The fact that plaintiff was a surety and that he would benefit by the payment of the Gammell note is immaterial. So far as the laws of the state are concerned, W. R. Hinkle had a right to prefer Gammell over his other creditors. Rev. Laws 1919, sec. 2901. Section 2897 of the Code was satisfied by an immediate delivery of the property, and an actual and continued change of possession.

An express trust in personal property, under such circumstances, may be created by parol and will be so created, though the words "in trust" or "trustee" are not used, where such delivery is accompanied by statements showing a clear intent that the property so delivered shall be used or held for the benefit of another. As was said by the Supreme Court of Indiana (Haxton v. McClaren, 132 Ind. 235, 31 N. E. 48):

"A trust in personal property may be created by parol. In the absence of a statute, as the owner of personal property has entire control of it, he may sell and convey it by parol, or he may transfer it for such uses and trusts as he may desire in the same manner. If a trust is once created and accepted it cannot be altered or changed either by the donor or the trustee without the consent of the beneficiary. Nor, if executed, can it be revoked without the consent of the cestui que trust. If the trust is perfectly created, the donor or seller having nothing more to do, the person seeking to enforce it having need of no further action on the part of the donor, nothing being required of the court but to give effect to the trust, it will be carried into effect at the suit of a party interested although it was without consideration."

The principles so announced have been applied by the courts to cases analogous to the one at bar in Walker v. Harris (Ky.) 114 S. W. 775, Scott v. Wickliffe, 1 B. Mon. (Ky.) 353, Chase v. Perley, 148 Mass. 289, 19 N. E. 398, People v. Harrison, 107 Cal. 541, 40 Pac. 956, Walden v. Karr, 88 Ill. 49, Jenkins v. Doolittle, 69 Ill. 415, Wilkinson v. Stewart, 30 Ill. 49, Dawes v. Dawes, 116 Ill. App. 36, Coppage v. Gregg, 127 Ind. 359, 26 N. E. 903, Bath Savings Institution v. Hathorn, 88 Me. 122, 33 Atl. 836, 32 L. R. A. 377, 51 Am. St. Rep. 382, Reiff v. Horst, 52 Md. 255, Kintner v. Jones, 122 Ind. 148, 23 N. E. 701, and Springs v. Cooper (Tenn. Ch. App.) 51 S. W. 997.

It is true that mere delivery of property to a person to sell and pay the proceeds to another may create only an agency. Huff v. Earl, 3 Ind. 306; Sheldon v. Sheldon, 13 Johns. (N. Y.) 220; Francis v. Gisborn, 30 Utah, 67, 83 Pac. 571; Comley v. Dazian, 114 N. Y. 161, 21 N. E. 135; Trubey v. Pease, 240 Ill. 513, 88 N. E. 1005, 16 Ann. Cas. 370. The essential distinction, applicable to this class of cases, distinguishing a mere agency from a trust, seems to lie in whether or not the principal or donor parts entirely with the control, possession, and right of disposition of the property. In the instant case there is nothing showing that W. R. Hinkle was ever to exercise any further dominion or control over the mules. If he once perfectly created the trust, he himself was afterward incapable of revoking it without the consent of the parties, and any subsequent acts upon his part could be properly evidentiary only as tending to show his intentions in the original transaction. The trial court so, in effect, correctly instructed the

jury. As a trustee, H. D. Hinkle not only had the possession and right to the possession of the property, but he had a title—a special interest therein as such trustee which would enable him to maintain conversion against a third party interfering with his possession. See 38 Cyc. 2050, 39 Cyc. 447, and cases cited. As has been above noted, in the absence of any evidence that the creating of the trust was in fraud of creditors, being once perfectly created, no creditor of the donor of the trust has a right to seize the trust estate, divert it from the trust purpose, and apply it to the payment of his own debt. If a creditor does so, against the will of the trustee, it constitutes a conversion for which the trustee may maintain his proper action.

But one other point seems to need attention. We have frequently said, as in Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209, and many similar cases, that a party must frame his pleadings in accord with some definite, certain theory, that the prayer and relief which he claims must be responsive thereto, and that on appeal from any judgment rendered in such action the parties are bound in the appellate court by the theory assumed in the trial court. It has also been said that after a cause tried upon one theory has been reversed, the unsuccessful defendant in error will not be allowed to change his theory and pleadings so as to set up a different state of facts as a basis for recovery (St. Louis & S. F. R. Co. v. Hardy, 45 Okla. 423, 146 Pac. 38); but it has never been said in this court that in a cause in which a judgment has been rendered upon pleadings, evidence, and proper instructions, sufficient to support it, such judgment will be reversed because either the trial court or the party attempting to sustain it asserts an untenable theory in its support. The reason for both rules is at once apparent. It is entirely unfair for a party to present one theory of the case to the trial court, and secure a ruling upon that theory, and then attempt to upset a judgment, correct upon the matters presented, by reason of some theory of law not offered to the trial court for determination. But upon the other hand, it would be equally unjust, after a trial has been had, and upon the facts adduced the court has correctly instructed the jury, perhaps with the proper principles of law clearly in mind, to reverse the judgment because counsel do not advance the proper legal arguments to support the judgment. It would be likewise unfair to reverse a cause, presented upon the proper theory, because the trial court, although giving correct instructions to the jury, did not adopt the position of counsel, as a reason therefor, but acted upon some erroneous theory of his own. This court seeks to affirm judgments rather than to reverse them, and where the pleadings and proof are sufficient, and the instructions correct under the proper rules of law to be applied, will not reverse the judgment solely because the briefs advance an argument in support with which we cannot agree.

The judgment appealed from should be affirmed.

By the Court: It is so ordered.