PALMER v. REPLOGLE et al.

No. 20028. Opinion Filed Sept. 8, 1931.

Rehearing Denied Oct. 27 1931.

J. D. Simms, for plaintiff in error.

A. M. Beets and O. K. Wetzel, for defendants in error.

SWINDALL, J. This action involves an undivided one-half interest in the allotted land of Ida, Seminole by Blood No. 1860, and it turns upon the identity of the father of the allottee, the plaintiff in error contending that the father was Samsoche, a Seminole who appeared as No. 630 on the 1897 roll of the Thomas Palmer band, and the defendants in error contending that the father was one Samsoche, a Seminole citizen who was arrested in 1891, and was killed by one Charley Narcomey in 1892. The trial court held that the evidence was clear, cogent, and convincing to the effect that it was the latter Samsoche who was the father of the allottee, and rendered judgment in favor of the defendants in error.

(1) In enrollment proceedings recitals in respect to parentage and other identifying circumstances are not conclusive. The principle of res adjudicata does not apply to points which come under consideration only collaterally or incidentally. L. B. Norton v. Cheparney Larney, 266 U. S. 511, 69 L. Ed. 413.

* (2) The designation of the parents of an enrolled member of one of the Five Civilized Tribes, and other identifying circumstances, may be the subject of collateral attack to show error, and they can be held to be incorrect, at least, if the evidence to that effect be clear, cogent, and convincing. Norton v. Larney, supra; Mowdy v. Leeper, 122 Okla. 16, 250 Pac. 432; Cox v. Colbert, 135 Okla. 218, 275 Pac. 317.

A reading of this record satisfies us that the trial court was manifestly right in concluding that the evidence was clear, cogent, and convincing in support of the contention of the defendants in error that the father of the allottee was the Samsoche who was arrested in 1891 and killed in 1892.

There were many conflicts in the evidence. That would be natural in attempts to testify to matters occurring in the last decade of the preceding century, and especially as to matters as to which there were not striking circumstances calculated to induce observation and recollection as to identity, time, and place. It is observable that in the testimony of those attempting to prove Samsoche, the grandson of Yufkee, to have been the husband of Ina (Annie) and the father of the allottee, there is a striking want of definiteness and detail. One witness, who was a relative of that Samsoche, and was also interested in the event of the action, testified that when he was in school and before that Samsoche married one Lucinda, he was living "out west." The wife whom that Samsoche married after the death of Lucinda did not testify to ever having been told by him that he was married before his marriage to Lucinda. Two women neighbors testified to his having told them that he had a wife over west, but they said he did not tell them her name, and they could give no details other than his bare alleged statement. On the other hand, other neighbors knew nothing of his ever having been married before his marriage to Lucinda, and even his brother, David Harjo, never heard him speak of having been married prior to his marriage to Lucinda. Further, a fruit tree agent who sold trees in the Seminole country about 1890 testified to knowing and seeing him around old man Yufkee's, and that it was his impression that he was then married and living in the neighborhood. Further, the oldest child of that Samsoche and Lucinda shows on the roll card as seven years of age as of July, 1898, indicating that he was married to her not later than 1891. The principal testimony as to that Samsoche having lived around Econtuchka when the child was very small was from one H. R. Brown, and that is weakened by the fact that he was interested in the action, and also by the fact that he was clearly mistaken in identifying an Indian in a picture as the one he saw with Ida and as the grandson of Yufkee. No other witness could identify the picture as one of that Samsoche, and several denied that it was. Further, the witness was clerking at a store and was away most of the time, only working intermittently. And he is so contradicted by evidence as to which Samsoche was living with Bessie Sena and Ina in 1891 as to clearly show him to have been mistaken. He did testify to seeing a

142

Samsoche and Ina and their having a little child with them about the latter part of the period during which he saw them. It appears from the record that during most of that period, which did not terminate until 1893 or 1894, Samsoche, the grandson of Yufkee, was married to Lucinda, as their oldest child was enrolled as seven years of age as of July, 1898.

There was considerable evidence in the record as to Samsoche, the grandson of Yufkee, having been seen with Ina and having been at the home of Bessie Sena, but it was not as a rule from people intimately acquainted with him, and in some instances an attempt was made to identify him by reference to his having a peculiar walk. It appears evident that there was much talk about the case, and we can readily understand how such an attempt at identity or description would not appeal to the trial judge as against the strong evidence of those identifying the Samsoche who was killed as the one who lived with Ina before the child was born and up to the time of his arrest at Bessie Sena's home in 1891.

Opposed to that evidence of the plaintiff in error. is evidence in support of the contention of the defendants in error which is clear, cogent, and convincing, it being clear, positive, and direct evidence of those who knew Samsoche personally and had to do with him in their official capacities, and from intimates and relatives.

Jacob Harrison, who arrested a Samsoche at the home of Bessie Sena, was well acquainted with both Samsoches. He testified that it was the one who was killed in 1892 that he arrested. He was well acquainted with both families. He said it was a common report at the time that this Samsoche who was later killed was living with Ina at the home of Bessie Sena, the mother of Ina, and that it was that information that directed him in his search for Samsoche. He testified that he found him there, living with Ina and Bessie Sena, and that the child was there, just about big enough to crawl. He also saw the Samsoche who was killed, after his death, and he testified that it was the one that he arrested. He never knew or heard of the other Samsoche, the grandson of Yufkee, living with Ina.

Also, John A. Jacobs, who had been prosecuting attorney in the Wewoka District and had been a member of the House of Kings and of the House of Warriors, and had been Inspector of War, and as an officer had once whipped Samsoche, offered strong evidence. He knew both Samoches. He married a woman who lived near the home of

Bessie Sena, and he knew of the common report at the time that the Samsoche who was later arrested and later killed, was living with Ina at the home of Bessie Sena. He actually saw Samsoche killed and said it was the Samsoche who had lived at the home of Bessie Sena and who had been arrested by Jacob Harrison. His testimony was further supported by the fact that he and another man had sent this Samsoche to Choctaw City or somewhere in the west for whisky. He testified that Samsoche stopped at Bessie Sena's home on two trips, and that it was soon after that that he heard that he was living there with Bessie and Ina.

Samego Caesar testified that Samsoche was killed by Charley Narcomey, and that he was the same Samsoche who lived with Ina west of Econtuchka. He visited them at their home when they were living in the Shawnee country, and before they moved into the Econtuchka neighborhood, before the child was born.

Another witness, Timmie Harjo, testified that he was a boy when Samsoche was arrested; that he then lived about a half mile from Bessie Sena's; that Samsoche was living there with Ina, and that the boy Eddie could sit alone and was big enough to walk at the time when Samsoche was arrested. Later he heard that Samsoche had been killed. He remembered the arrest of Samsoche. The witness' older brother was arrested at the same time and the witness told of the arrest in detail.

Nokussilla testified that he went to the funeral of Samsoche. That he knew him to be the one who lived with Ina. He testified that he visited them at Bessie Sena's, and that Samsoche told him that the boy Eddie was his boy.

Wattie Mitchell, one of those arrested with Samsoche, said that this was the Samsoche who was later killed by Charley Narcomey, and that he had visited Samsoche when he was living with Ina at Bessie Sena's and that the boy Eddie was then crawling.

Further, several relatives of the Samsoche who was killed identified him as the Samsoche who lived in the Bessie Sena family with Ina, west of Econtuchka. Sulpa Kane, an aunt's son, testified to visiting them there and that they had the son called Ida, a male whose real name was Eddie. He testified that he saw Samsoche after he was killed by Charley Narcomey and that it was the Samsoche who lived at Bessie Sena's with Ina and Eddie. Chilli Fish, a relative of Samsoche at whose home Samsoche had formerly lived, testified to visiting him at

Bessie Sena's, and that he was living with Ina and they had the child Eddie, big enough to walk. He said he called Samsoche his nephew. He was at Samsoche's funeral. He went after him and brought him to Robert Bruner's house when he was killed. Also, Ellen Fish, the wife of Chilli, testified to Samsoche visiting them and telling her that he had a child named Eddie, and that the mother was Annie (Ina). She and Chilli both testified that Samsoche visited them after he got out of jail, and she said that he was visiting them at the time he was killed at a dance by Charley Narcomey. William Selvidge testified that in the year 1890, he sold fruit trees to old man Yufkee and also to the Samsoche who was his grandson and that at that time that Samsoche was living with a woman about a mile and a quarter from old man Yufkee's home, indicating that he was married to Lucinda as early as that time.

It is clear that this whole controversy arose from somebody's error in giving in information as to the child which was correct only in the statement that Ida was the child of Ina and the grandchild of Bessie Sena. The name was wrong, the sex was wrong, the correct name having been Eddie, Eddie having been a male, and the age given as of July, 1898, six years, was clearly wrong, as the testimony is clear that Ida or Eddie was at least big enough to crawl in 1891, when Samsoche was arrested; and the roll card contains on its face so much error that it is not strange that there was another error in designating the Samsoche who was a member of the Thomas Palmer band as the father. The first information given in was in 1895, apparently, which was several years after the other Samsoche was killed and his name had been stricken from the tribal rolls. Bessie Sena had moved into the Shawnee country prior to 1890. She left in anger because one of her sons had been killed, and there is no evidence of later communication with the tribal authorities. This is one explanation of the erroneous information. It surely was not given in by her.

The trial judge is to be commended for the careful, painstaking manner in which he endeavored throughout the trial to elicit all possible information that would assist in the determination of the question, without indication of opinion and in utter disregard of whom the testimony might benefit. His conclusion was manifestly correct. We do not rely for its support upon the fact that he saw the witnesses and observed their demeanor and appearance, but rather on the noticeable lack of definiteness of the witnesses of the plaintiff in error, who would be supposed to be able to furnish evidence of the most definite and clear character, as compared with the clean, clear-cut, well-knit theory of the defendants in error, supported by positive testimony of the clearest kind, well supported by evidence of those who actually knew intimately the things as to which they testified, resulting in a web of evidence so clear, cogent, and convincing that in the opinion of the writer a contrary finding, had it been made by the trial judge, would have constituted reversible error.

(3) The plaintiff in error alleges error in rejecting entries appearing in a book kept by Governor Brown in connection with a mercantile business, which book was corrected annually from the tribal rolls and in which entries were made by him and also by his clerks. The court held that the entries were not made pursuant to any official duty and refused to admit all the entries offered. However, it did admit entries made in the handwriting of Governor Brown, who was deceased at the time of the trial, among which was one as follows: "child." "child." and "child" designating three grandchildren of Bessie Sena, not designated by names. The entry was made in 1895, and it was offered to prove that Eddie was not born until long after 1892, when Samsoche claimed by the defendants in error to have been the father of Eddie was killed. That entry was admitted with the others in Governor Brown's handwriting. So far as the entries not in his handwriting are concerned, it appears that there was a mass of tribal and enrollment records in evidence, and that those denied admission were merely cumulative, and, further than that, it clearly appears from the record that the plaintiff in error would not have been entitled in any event to prevail, so that rejecting these other entries, even if erroneous, was harmless. Lee v. Oklahoma State Bank of Ponca City, 119 Okla. 72, 247 Pac. 983; 4 C. J., Appeal and Error, sec. 2993, p. 1009.

Judgment affirmed.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.

LESTER, C. J., not participating.