RATCLIFF v. LEE.

No. 33081.   April 20, 1948.

*192 P. 2d 843.*

Clay M. Roper, of Oklahoma City, for plaintiff in error.

Hal Whitten and Whitten & Whitten, all of Oklahoma City, for defendant in error.

DAVISON, V.C.J. By this action plaintiff, Hugh Ratcliff, seeks possession of a lockbox and its contents, in the Fidelity National Bank in Oklahoma City. The parties will be referred to as they appeared in the trial court.

Orville D. Lee died December 5, 1945, leaving his widow Abba M. Lee, who, as administratrix, is the principal defendant herein, and his son, Ronald D. Lee. Plaintiff, who lived at Vinita, Okla., was his nephew. Mrs. Lee filed suit for divorce in July, 1943, which action was still pending at the time of her husband's death. That action was arduously contested and, in its progress, the court ordered an inspection and inventory of the contents of a lockbox which Mr. Lee had at the Tradesmen's National Bank, for the purpose of fixing the amount of child support. In addition to valuable papers, there were several thousand dollars in currency in the box. About a month later, he rented a lockbox in the Fidelity National Bank in the names of "Lee Advertising Co." and "Hugh Ratcliff," by which latter name he introduced himself and was so known to the officers of the bank. At the time of his death, the lockbox at the Fidelity National Bank contained passbooks to three banks in Kansas, some $200 worth of government bonds, two watches, several written instruments and approximately $16,000 in currency. This lockbox and its contents constitute the subject matter of this litigation.

Mr. Lee represented himself to the officials of the Fidelity National Bank, to be Hugh Ratcliff; by that name he was known; signing that name as his own, he entered the bank vault and opened the lockbox 65 times. Not until after his death did anyone at the bank know his true name. He used the name Hugh Ratcliff as his own on several other occasions, and had instructed his son to use that name, when necessary, if in trouble. In December, 1943, Mr. Lee made a will by the terms of which he devised to his wife the sum of $3,600 to be paid in monthly installments and to his son, a life income. The will discloses a very bitter feeling toward his wife. However, he and his wife became reconciled in September, 1945, approximately three months before his death and again began living together. The will was denied admission to probate because of testimony of its revocation and destruction.

Plaintiff predicates his right to recover upon the following alleged facts: That, immediately upon renting the lockbox at the Fidelity National Bank, Mr. Lee delivered one of the keys to his attorney with instructions that if and when he died the key and contents of the box were to be delivered to plaintiff; that those instructions had not been changed at the time of the decedent's death; that he told his said attorney where plaintiff lived, and that in response to a letter from the attorney after Mr. Lee's death, the plaintiff came to Oklahoma City and instituted this action against the bank, the attorney, and the administratrix of the estate of Mr. Lee.

Much of the testimony establishing these facts was not admitted by the trial court on the theory that it constituted privileged communications between attorney and client and that it was testimony of transactions had with a deceased person by one of the parties to a suit wherein the representative of the deceased was also a party. Plaintiff testified that he knew nothing about the lockbox or any action of his uncle concerning it until he received the attorney's letter.

A major portion of plaintiff's brief is devoted to the alleged error of the trial court in rejecting the above testimony, but any error committed in this connection is harmless unless the facts, so sought to be proved, entitled plaintiff to recover. Palmer v. Replogle et al., 152 Okla. 140, 4 P. 2d 30; Byrd v. Mc-Koy, 183 Okla. 209, 81 P. 2d 315. The evidence offered was insufficient to entitle plaintiff to a judgment upon the theory of a gift or a trust. The recent opinion of this court in the case of Gibbs v. Barksdale, 199 Okla. 141, 184 P. 2d 755, discusses the elements essential to the establishment of such a gift.

The only other theory upon which plaintiff could rely and the one insisted upon in his brief, is that of the establishment of a trust by the decedent for the use and benefit of the plaintiff. Cases are rather frequent wherein a claim is made to the property of a decedent. Generally, where there is no will involved, the right to recover is predicated upon one or a combination of three theories of origin of titles —a gift inter vivos, a gift causa mortis, or creation of a voluntary trust. There is quite a similarity in these modes of conveyance of property. To establish any one of them, after the death of the donor, the evidence must be clear, explicit and convincing in support of every element necessary to constitute a valid gift. The matter was thoroughly discussed in the case of Sauls et al. v. Whitman, 171 Okla. 113, 42 P. 2d 275. Therein it was said:

"Delivery and accompanying intent to make the gift are essential elements; her intention to give and her expression relative thereto are not sufficient to complete the gift in the absence of facts and circumstances satisfying the requirements of delivery. Fouts v. Nance (55 Okla. 266, 155 P. 610) Apache State Bank v. Daniels (32 Okla. 121, 121 P. 237) . . . Such transactions taking the place of testamentary acts, and in many instances being nothing but substitutes therefor, the opportunity for fraud is great, and to

many persons, inviting. Legislatures of all states, realizing the necessity of throwing safeguards around testamentary conveyances, in the proof of which it is impossible to obtain a version of the facts from the lips of the donor, have enacted stringent requirements to validity. When any mode of conveying property at death is attempted by other than the methods prescribed by law, it is necessary that a full compliance be had with the forms and means requisite to such transactions. It is for this reason that the evidence establishing gifts inter vivos and causa mortis must be clear, explicit, and convincing in support of every element necessary to constitute a valid gift. Lucia v. Schaefer (109 Okla. 167, 233 P. 444) . . . .

" . . . When the gift cannot be upheld as inter vivos or causa mortis, some courts have permitted its existence by calling the transaction a trust. We are not so inclined. The better view and, it seems to us, the weight of authority, is that an attempted testamentary disposition by way of gift, if invalid as a gift, will not thereby be given effect by calling it a trust. In this case we are unable to escape the conclusion that Sauls and Tucker were in all respects the mere agents of the donor, and cannot under any theory, except by straining the imagination, be deemed trustees for the donee society. As said by us in First National Bank of Granfield v. Hinkle, 65 Okla. 62, 162 P. 1092, 1094: 'The essential distinction, applicable to this class of cases, distinguishing a mere agency from a trust, seems to lie in whether or not the principal or donor parts entirely with the control, possession, and right of disposition of the property.' "

To the same effect but discussed from the standpoint of a gift inter vivos is the case of Sands v. Dildine et al., 175 Okla. 520, 54 P. 2d 171. Also, see Cameron v. Cameron, 96 Okla. 98, 220 P. 889, and Seran v. Davis, 174 Okla. 433, 50 P. 2d 662.

In the case at bar, the rejected testimony, if admitted, would not have entitled plaintiff to a judgment for the lockbox and its contents. The most that could be said is that Mr. Lee made

his attorney his agent for delivery of the property after death.

At all times until his death, he had absolute dominion and control over the property and when he died any authority the agent had was revoked.

The lockbox was rented more than two years prior to Mr. Lee's death and it is not intimated that the matter was ever mentioned again, after the conversation had at the time of the delivery of one of the keys to his attorney. Nor was the plaintiff told anything about the matter. Another very significant fact is that several months after renting the lockbox, Mr. Lee made a will, wherein he made provision for the plaintiff. The will, however, was later revoked, but its provisions throw light on Mr. Lee's attitude at the time the box was rented.

We have in this opinion taken a view of the rejected testimony most favorable to the plaintiff and conclude that if any error was committed in the rejection of same it was harmless and plaintiff was not entitled to recover.

The judgment is affirmed.

HURST, C.J., and BAYLESS, WELCH, CORN, and LUTTRELL, JJ., concur.