SEXTON v. MORGAN.

No. 34863.    April 15, 1952.

*243 P. 2d 670.*

A. E. Pearson, Oklahoma City, for plaintiff in error.

Kenneth B. Kienzle and Clarence Tankersley, Shawnee, and Lawrence Jones, Bristow, for defendant in error.

BINGAMAN, J. This action was brought by plaintiff, Calvin T. Sexton, against the defendant Andy J. Morgan, to establish an interest in certain overriding royalties, oil payments and oil and gas mining leases held in the name of the defendant on lands in township 17 north, range 8 east, in Creek county, Oklahoma, and for an accounting. Plaintiff in his petition alleged that he gave the defendant $1,100, which was to be invested in oil and gas leases in Creek county, which were to be blocked up by defendant and upon which drilling contracts were to be obtained by defendant, and that plaintiff was to have an equal share in all such leases or the profits derived therefrom. Defendant denied that plaintiff was to receive any interest in any oil and gas leases in Creek county, except three particular leases located in township 16 north, range 10 east, and township 14 north, range 8 east. Defendant further alleged that he had fully repaid plaintiff the $1,100 advanced by plaintiff and that the same had been accepted by plaintiff in full satisfaction of all claims by him. The case was tried to the court as one of equitable cognizance and at the conclusion of all the evidence the trial court rendered judgment for defendant. Plaintiff appeals.

The sole contention made by plaintiff on appeal is that the judgment of the trial court is clearly against the weight of the evidence. This requires a brief analysis of the evidence. Plaintiff testified as a witness for himself and then called the defendant as his witness and aside from the testimony of the two parties there was very little evidence corroborative of their testimony introduced on either side. The evidence is voluminous and involved, being given in reference to various oil and gas leases in Creek county and some royalty acreage therein acquired by defendant and several drilling deals upon such leases procured by defendant, and it would unduly lengthen the

opinion to attempt to discuss the evidence in detail.

Plaintiff's testimony was that the defendant approached him about March 9, 1949, and stated that he had a number of calls for drilling blocks and had located some likely looking leases in Creek county, adjoining production; that he had checked with a local geologist and seen the shot dope and the leases looked good; that he could get the leases given to him in order to get test wells and that he needed financial help in securing leases having abstracts brought down for examination and to pay other expenses incident to procuring the drilling of wells thereon. That if plaintiff would put up $500, defendant would put up a like amount and they would share the profits 50-50; that he gave defendant a check for $500 and a little later on another check for $500 and later an additional check for $100. He testified that at no time did the defendant advise him where the leases were located, except that they were located in Creek county, and that not until July, 1949, was he apprised of their location. He further testified that he made no effort to ascertain where the so-called drilling blocks were located and made no inquiry as to what portion of Creek county they were in. This was his testimony on direct examination, but on cross-examination he testified that sometime in May, when defendant approached him with a suggestion that he invest some more money in other deals in Creek county, he understood that the leases and some royalty in which he was interested were located in five sections. Two of the sections which he testified to were located in township 17, range 8 east, in which, together with the royalty, defendant contended plaintiff had no interest. He further testified that in July, for the first time, defendant gave him plats showing him the acreage in which his money was invested, which included a plat of the properties in township 17, range 10, and that at that time in response to an inquiry made by him,

defendant advised him that he had sold one lease for $1,600 and used the money to pay expenses in obtaining other leases. He admitted that when his money was returned to him in October, he accepted it without requiring an accounting or making any inquiry other than a casual one as to the Creek county deals. On cross-examination he testified that sometime in April or May defendant advised him that he had sold the lease for $1,600 and applied the money towards expenses.

Defendant, on the other hand, testified that at the time he first discussed the investment of money in Creek county leases he had with him a map and that he pointed out on this map the three drilling blocks which he proposed to purchase for plaintiff and himself; that they covered lands in section 33, township 16 north, range 10 east; section 16, township 15 north, range 8 east, and section 13, township 14 north, range 8 east; that he used the monies advanced by plaintiff to him and his own money in obtaining the leases, having abstracts made or brought to date and examined, and in endeavoring to procure the drilling of wells thereon; that he was successful in procuring the drilling of one well which was a dry hole, but was unable to procure the drilling of wells on the other two blocks before the leases expired. He testified at length as to his expenses, stating that a part of the time he had his son and another man assisting him in obtaining leases on small royalty interests under the tracts, and in procuring corrective matter required by attorneys so that when he presented the deal to parties whom he thought would be interested in drilling wells thereon, the titles and leases would be in good shape. He testified that this work was expensive in that the parties from whom it was desired to obtain leases and corrective matter in nearly all cases had to be contacted personally; that he had to make trips to Wichita, Kansas, and to Dallas, Texas, in order to obtain some of the requirements and that there was a great deal of running around in which

automobiles were used, which was expensive. He testified that he sold an 80-acre lease in one of the blocks for $1,600, and that this money was used in defraying expenses in connection with the leases, in addition to the money given him by plaintiff and money of his own which he used, and that he offered the drilling blocks to various parties whom he thought would be interested in drilling deals, but was only successful in obtaining one well drilled.

He testified that sometime in May he conceived the idea of obtaining leases in township 17 north, range 10 east, and that at that time he approached plaintiff for the purpose of getting plaintiff to invest additional funds in that acreage with him, but that plaintiff refused to invest any further funds, and that at that time he pointed out on a map in his possession the acreage which he proposed to take with such additional funds; that plaintiff refused to make further investments, and that by borrowing some money and using other funds belonging to him he was able to acquire the leases in township 17, range 10. He denied that he had ever informed plaintiff that plaintiff had an interest in those leases or that any of plaintiff's money had gone into them, although in July, when he gave plaintiff plats or maps showing the acreage which he had acquired with plaintiff's money and in which plaintiff had an interest, he also gave plaintiff a plat on which he had marked off his acreage in 17-10, which he was still in the process of acquiring. On the demand of plaintiff he produced his checks and records, pointed out various checks used by him in paying expenses on the leases in which he testified plaintiff was interested and also testified as to the income which he received during 1949, for work done for other parties and for interests in the property in 17-10, sold by him. He testified that he told plaintiff sometime prior to October, 1949, in response to plaintiff's statement that he needed the money, that he would try to return plaintiff's money to him as soon as possible and that he was enabled to do so in October, by reason of having sold an interest in the leases in 17-10, and that at that time plaintiff accepted the money and made no complaint or inquiry as to any interest he might still have in property in Creek county.

It will be noted from the above that the testimony of the parties was very much in conflict, and this was also true in numerous details which we deem it unnecessary to point out in this opinion. We have many times held that in an equity case, where the evidence is conflicting and where the trial court has the advantage of hearing the witnesses testify and observing their demeanor while testifying, we will not disturb its findings and judgment unless clearly against the weight of the evidence. Wilkerson v. Walker, 196 Okla. 618, 167 P. 2d 372; Hill v. Hill, 202 Okla. 483, 215 P. 2d 553; Hamel v. Toronto Investment Co., 202 Okla. 553, 216 P. 2d 319; Noble v. Bodovitz, 175 Okla. 432, 52 P. 2d 1046.

In Wilkerson v. Walker, supra, we said:

"In cases of equitable cognizance findings of fact by trial court are not conclusive on appeal, but appellate court's judgment should not lightly displace judgment of trial court which had the advantage of observing witnesses. Noble v. Bodovitz, 175 Okla. 432, 52 P. 2d 1046. This is especially true where the evidence is conflicting, and the finding thereon will not be disturbed unless clearly against the weight thereof. Brown v. Investors Service Co., of McAlester, 182 Okla. 270, 77 P. 2d 566."

In applying the rule above announced to the instant case we have carefully read and studied the entire record, and are unable to say that the judgment of the trial court is clearly against the weight of the evidence. In fact, from a reading of the cold record the testimony given by defendant appears to be more consistent and more convincing than that given by the plaintiff, and as pointed out above no supporting testimony of any material importance was given by any other witnesses for the parties. It impresses us as unusual

that plaintiff would turn his money over to defendant to be invested in prospective oil properties without making even casual inquiry as to the location of the property or the surrounding development, if any, and that he would receive the check in repayment of his advances and apparently accept the same in satisfaction thereof without requiring a statement in some detail as to how it had been expended and the properties remaining, if any, in which it had been invested. Apparently he did not do this but was satisfied with the statement by defendant, which he testified defendant made at the time, that they had nothing remaining in Creek county, and that no profits had been realized by the venture. But, be this as it may, we think that when the evidence as a whole is considered the judgment of the trial court was not clearly against the weight thereof.

Affirmed.

HALLEY V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.