Caroline WILSON, formerly Caroline Bruner, and Aaron Sancho, Plaintiffs in Error,

v.

LEE EVANS DRILLING CO., Inc., a corporation; Marilou J. Hagen; Arthur E. Hagen; Al D. Pierce; S. J. Darrah; C. L. Billingsley; Walter Billingsley; Horsley, Epton & Culp, a co-partnership; Kathryn M. Harris, Trustee; Sarah Black; Lula Jacobs, one and the same person as Honey Bruner; Melvina Bruner, now Homedy; George Huckleberry; Isadora Buckner; Edythe S. Whitney; E. W. Whitney; Mae S. Bruner; Eva Bruner, now Hollins; Ramsey Bruner; B. D. Lack; Anna Head Evans Scoggins, one and the same person as Anna May Head; James B. Miller, Trustee; F. P. Swan; Gene Hensley; Eugene Douthit, C. P. J. Collins; Arlie A. Collins; W. W. Atkins; S. W. Bates; W. S. Damron; Grace Gladden, now Damron; H. A. Lowery; Ruth Lowery; H. W. Courtney; and Stanolind Oil Purchasing Company, Defendants in Error.

No. 37228.

Supreme Court of Oklahoma.
Dec. 17, 1957.
Rehearing Denied March 11, 1958.

**631**

V. E. Stinchcomb, Baker H. Melone, Bulla, Melone & Meister, Oklahoma City, for plaintiffs in error.

Horsley, Epton & Culp, Allen G. Nichols, H. W. Carver, G. O. Wallace, Wewoka, Smith, Johns, Smith & Neuffer, Oklahoma City, Fellows & Fellows, Tulsa, for defendants in error.

PER CURIAM.

This action was initiated by the owners of oil and gas leases on the allotment of Ramsey Bruner, deceased, Seminole Freedman, to quiet their title to the leasehold estate against the claims of plaintiffs in error. Aaron Sancho, one of the plaintiffs in error, answered and cross-petitioned, asserting his claim as a son of a deceased daughter of the allottee, and interpleaded as defendants in the action all others known to be heirs of the allottee, or who claimed an interest in the allotment, Caroline Wilson, the other plaintiff in error, also answered and cross-petitioned, asserting her claim as a daughter of the allottee. All other persons claiming as heirs of the allottee, or their devisees or assignees, asserting an interest in the allotment, pleaded their respective claims in answer to the plaintiffs in error's cross-petitions, and the action proceeded to trial. Aaron Sancho and Caroline Wilson will be referred to hereinafter either individually or as plaintiffs in error and all other parties will be referred to as defendants in error.

The plaintiffs in error's claim to the ownership of an interest in the property is based upon their contention that Ramsey Bruner, according to the custom and practice, took as a second or plural wife, Zadie Stidham, by whom he was the father of Caroline and of Pearly, now deceased, mother of Aaron Sancho. The events material to the determination of this action occurred in the last part of the Nineteenth Century, and the testimony of the many witnesses was conflicting on the factual issues. It appears, however, that plural marriages were recognized in the Seminole Nation, and the validity of this practice will be taken as an established fact in our discussion.

Prior to any plural marriage, Ramsey Bruner was married to Sarah by whom he

had five children: Palesa, Bud, August, Melvina, and Solomon. The trial court also found that a Gertrude J. Martin, nee Bruner, was an illegitimate but recognized daughter of the allottee. Only Melvina was living at the time of trial. The other defendants in error claim as heirs, devisees or assignees of these undisputed heirs of the allottee. Ramsey Bruner died in 1905, and the property has been in the possession of some of his aforementioned heirs since that time.

In answer to the cross-petition, among other defenses, the defendants in error pleaded certain judgments as a bar to the claim of plaintiffs in error. In its findings of fact and conclusions of law the trial court found that plaintiffs in error were estopped by judgment. This issue, as well as the facts concerning their birth, necessitates a separate consideration of the respective claims of plaintiffs in error.

### Aaron Sancho.

■■■■ One of the judgments pleaded by defendants in error was the decree of distribution in the Estate of Bud Bruner. In March, 1954, hearing was held in the county court of Seminole County on the petition for distribution and discharge of the administrator in the Estate of Bud Bruner. At that hearing Aaron Sancho appeared personally and therein claimed to be the grandson of Ramsey Bruner, the child of a deceased sister of the deceased. It appears from the evidence here that this issue was litigated in that hearing. In its decree of distribution the County Court of Seminole County held that Bud Bruner died intestate; that "he left no widow, no children and no child of any deceased child surviving him, but left as his sole and only heirs at law" Melvina, a sister; Lula Jacobs, a niece, daughter of Palesa; Solomon, a brother; and Sarah Black and Eva Bruner, nieces, and Ramsey Bruner, a nephew, children of August. Since it is and was undisputed that Aaron is the child of Pearly, the effect of this decree was to determine that Pearly was not the legitimate child of Ramsey Bruner, for

by our statute of descent the property descended to the brothers and sisters and to the children of any deceased brother or sister by right of representation. 84 O.S. 1951 § 213(3). Thus the identical issue upon which Aaron Sancho must prevail in this action has been determined heretofore contrary to his contention, in an action to which he was an adverse party to the acknowledged legitimate heirs and descendants of the allottee, defendants in error here. He is precluded in this action by the determination there.

"A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies, although the subsequent suit is on a different cause of action; and a plea setting up the former adjudication of a fact, right, or question distinctly put in issue between the same parties or their privies is not a plea in bar, but a plea of estoppel by judgment. Identity of causes of action is not a necessary element in the plea of estoppel by judgment but it is necessary that the point upon which the plea of estoppel by judgment is based is in issue in the latter case and was in issue and decided in the former."

Craig v. Roxoline Petroleum Co., 170 Okl. 307, 39 P.2d 575; see also McKee v. Producers' & Refiners' Corporation, 170 Okl. 599, 41 P.2d 466; Reinhart & Donovan Co. v. Guaranty Abstract Co., 201 Okl. 334, 205 P.2d 881; Garrison v. Bonham, 207 Okl. 599, 251 P.2d 790. The cases cited by the plaintiffs in error do not conflict with our conclusion. Johnson v. Whelan, 186 Okl. 511, 98 P.2d 1103, recognized the rule where the factual issue had in fact been determined by the prior adjudication. So also did Harding v. Taylor, Okl., 272 P.2d 443. These cases distinguished the broad application of res judicata from the more limited application of the principle where a particular issue within a cause of action has been adjudicated. The more limited rule is usually referred to as an estoppel

by judgment or verdict and does not require all of the identity of elements necessary to create a complete bar to a cause of action. Freeman on Judgments, 5th Ed., §§ 627–677. Lincoln v. Herndon, 141 Okl. 212, 285 P. 120, and Jones v. Douglass, 152 Okl. 89, 5 P.2d 345, presented a different situation from that presented here. Those cases involved the devolution of Indian ancestral estates prior to statehood and determined that the court in a decree in the estate of the ancestor did not have jurisdiction to determine the heirs of the deceased child. Here, too, the issue of relationship was not stipulated as in the Lincoln case, and no half-blood problem intervenes.

### Caroline Wilson.

 The trial court found that the "sole and only heirs" of the allottee were his wife, Sarah, their five children, and Gertrude J. Martin, an illegitimate but recognized daughter; "* * * that Zadie Stidham was the mother of Caroline Bruner, who was born in the Creek Nation in the 1890's, the exact date being uncertain; * * * The preponderance of the evidence reveals, or discloses, that the father of Caroline Bruner * * * was John Tecumseh and not Ramsey Bruner * * *."; and "* * * that Cross-Petitioners have offered proof of heirship and other copies of Indian Departmental records and evidence as tending to support the claim of Aaron Sancho and Caroline Bruner, in that Caroline Bruner and Pearle Bruner were children of Ramsey Bruner. These records are Prima facie evidence thereof, but same has been overcome and nullified by true, cogent, clear and concise evidence introduced by the plaintiffs, intervenors and defendants herein."

During all the time material to this action, the allottee lived with his wife, Sarah, and their children on his allotment about six miles southeast of Konowa, Oklahoma, on the north side of the South Canadian river in what is now Seminole County. Prior to 1890, John Tecumseh, Ramsey's half-brother, and his wife, also named Sarah, lived six to eight miles away across the South Canadian river in the Chickasaw Nation. Living on Tecumseh's property and in one of his houses were Zadie Stidham, his wife's sister, and her children. It is plaintiffs in error's contention that Zadie was at that time the plural wife of Ramsey Bruner and that he was the father of her children. Around 1890 John Tecumseh moved his family to Bearden, in the Creek Nation, some 50 to 60 miles to the northeast. He moved Zadie at the same time and provided her a home in the Bearden community on his property approximately one-quarter of a mile from the house in which he lived. It does not appear that Caroline had been born at the time the family moved to Bearden. Most of the witnesses testified that the first time they remember seeing Caroline was in the Bearden community. Zadie Stidham died in 1904 and was buried at the same time as a child of John Tecumseh's in an adjoining grave. John Tecumseh erected a monument over her grave bearing his family name. When Ramsey Bruner died the next year, his wife Sarah and her children divided up his personal property, consisting of several hundred head of cattle, under the supervision of the Band Chiefs of the Tribe as was the tribal custom. No claim was made on behalf of plaintiffs in error to that property. No claim by plaintiffs in error was asserted to this allotment until the County Court's distribution of Bud Bruner's estate after oil had been discovered on the property.

Caroline Wilson testified that she was born in 1890 and that her father was Ramsey Bruner. However, she also testified that she was married on November 19, 1911 when she was about 15 years of age. Furthermore, in 1912 in a verified petition to have her husband appointed her guardian to replace John Tecumseh, she stated that she was "over the age of 14 years and under the age of 18 years." Finally, she testified that she was 6 years of age when her mother died. Obviously, she did not know her correct age but it is equally apparent that she was born several years after her mother moved to Bearden.

Bearden was some 45 to 50 miles from Ramsey Bruner's home on this allotment. The testimony of the various witnesses is conflicting on whether Ramsey Bruner was ever in the Bearden community. There is an equally sharp division in the testimony on whether it was acknowledged that Caroline was his daughter and on whether Zadie Stidham was the plural wife of Bruner or Tecumseh. Plaintiffs in error rely to a great extent upon Indian Department records of proof of heirship and enrollment. One record relates to the allottee and was executed in 1936 by Milly Ann Thomas, half sister of Bruner. This document lists Caroline as a child of Ramsey Bruner. However, Milly Ann Thomas testified by deposition at the trial that she could neither read nor write; that the proof of heirship was not filled out by her; that she didn't tell anyone that Caroline was a daughter of Bruner; and, that the only children of Ramsey Bruner were those by his wife Sarah who was his only wife so far as she knew. The other departmental record upon which Caroline Wilson relies is Zadie Stidham's application for the enrollment of herself and Pearly and Caroline, her children, as Creek freedmen. This record, made in 1903, contains the testimony of Zadie Stidham upon which it was based and in which she testified under oath that she had lived in the Creek Nation continuously for twenty-one years and that Ramsey Bruner was the children's father. The record lists Caroline's age as 14 at that time. This testimony concerning residence in the Creek Nation conflicts with the undisputed testimony at this trial, and the record of Caroline's age conflicts with her own testimony as hereinbefore noted. Defendants in error likewise introduced a "proof of heirship" executed in 1916 by Ramsey's brother, August Bruner, which listed only the five children by Sarah as his heirs.

In addition to the foregoing, it is not disputed that Caroline was taken into John Tecumseh's home on the death of her mother and lived with his family until she was married in 1911. She was known as Caroline Tecumseh as well as Caroline Bruner. It is also not disputed that John Tecumseh was appointed guardian of Caroline upon his own petition in which he lists her as his child. In another petition, as her guardian to sell her interest in some real property, he again alleged that Caroline's next of kin were himself, "father and Sarah Tecumseh step-mother." There was also testimony by witnesses that he claimed her as his child on other occasions.

We are of the opinion, after careful consideration, that the trial court's judgment is not against the clear weight of the evidence. Plaintiffs in error earnestly insist that the enrollment records of the Indian Department cannot be overthrown as to statements of parentage contained therein except by clear, cogent, and convincing proof. This is the rule we have announced in Cox v. Colbert, 135 Okl. 218, 275 P. 317 and many other cases. We have said that such records are "prima facie" evidence of the matters stated. The record, however, is not conclusive and it may be collaterally attacked as to parentage. Palmer v. Replogle, 152 Okl. 140, 4 P.2d 30. If we were to eliminate from consideration the conflicting testimony of the various witnesses who purported to have first hand knowledge of this family, we think the undisputed testimony and the documentary evidence supplies the necessary proof to overcome the prima facie case established by the enrollment record. This is especially true in view of the shadow cast upon the veracity of Zadie Stidham. But in addition to the undisputed facts, the testimony of defendants in error and their witnesses was that Ramsey and Zadie were not husband and wife and that Caroline was not Ramsey's child. Of course, plaintiffs in error's witnesses testified to the contrary. The trial court is in a much better position to observe the witnesses and weigh the many factors concerning their testimony that cannot be incorporated within a record. For this reason, in a matter of equitable cognizance, we will not disturb its findings and judgment unless they appear to be clearly against the weight of the evidence.

Sexton v. Morgan, 206 Okl. 315, 243 P.2d 670.

In view of these conclusions, we are of the opinion that the other propositions presented do not involve reversible error.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by Commissioner James H. Nease the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.